**PHILIP WHITEHEAD, etc., et al., v. MIAMI LAUNDRY COMPANY**

36 So. (2nd) 382
July 9, 1948
Rehearing denied July 29, 1948

June Term, 1948
En Banc

*Gramling & Gramling,* for appellants.
*L. Earl Curry* and *Edward P. White,* for appellee.

CHAPMAN, J.:

The Miami Laundry Company filed its bill of complaint in the Circuit Court of Dade County seeking to enjoin the defendants below from picketing in or about the vicinity of the place of business of the plaintiff, or from displaying handbills, carrying any newspaper advertising or data, or announcing by radio or other means that the employees of the plaintiff were on strike. At final hearing the chancellor entered a decree enjoining the defendants, as prayed, and the defendants have taken an appeal from that decree.

The allegations of the bill of complaint upon which the decree was based are, in substance, viz:

Plaintiff is the owner and operator of a laundry and dry cleaning business in the City of Miami, and has 210 persons employed as laundry and dry cleaning workers. The defendant Whitehead is the business agent of International Laundry Workers Union, Local No. 222, American Federation of Labor. The other four defendants are former employees of the plaintiff who had been discharged by him because of inefficiency and lack of satisfactory service. During their course of employment none of these former employees ever made any

complaint about working conditions, salaries, or other kindred matters pertaining to their employment, and none of them has ever been constituted as an employees' committee for the purpose of collective bargaining.

For some time prior to the filing of the bill the defendant Whitehead, individually and as business agent for and on behalf of International Laundry Workers Union, Local No. 222, American Federation of Labor, has been attempting to enlist the employees of the plaintiff as members of said Union by attempting to hold meetings and to propagandize said employees by means of the mails and distribution of handbills urging said employees to join said Union. These efforts have continued over a period of months and have met with but little, if any, success. Whitehead has never presented to the plaintiff any evidence that a majority of said employees are members of any Union or that a majority of said employees have ever designated the defendant as the collective bargaining agent, or that the majority of said employees have ever, by a majority vote of the employees to be governed thereby, authorized or agreed to participate in any strike, walkout or cessation of work or continuation thereof, as covered by the provisions of section 481.09 Florida Statutes, 1941.

On May 12, 1947, at the time for employees to arrive for work, the four defendants, who were former employees, appeared before the plant of the plaintiff as pickets carrying signs which read: "The Miami Laundry and Dry Cleaning Company is unfair to their employees. We were fired for wanting decent wages and working conditions." These defendants continued to walk to and fro in front of the building for about 45 minutes and then ceased their picketing. They returned again at about noontime, and still again the following morning, and picketed in the same manner for a short period of time.

On May 13, 1947, the defendants distributed to the employees of the plaintiff a handbill which read: "Tune in Radio Station WINZ, 960 on the dial, 6:15 P. M. Wednesday, May 14th. Hear the truth about Miami Laundry and the Laundry & Dry Cleaning Board of Trade, and why there is labor unrest in Miami plants."

Simultaneously with these incidents occurring on May 12 and May 13, there appeared in the Miami Daily newspapers a reported news release by the defendant Whitehead, individually and in his capacity as business agent for the union, that his local organization, purporting to act for the employees of plaintiff had actually called a strike to be effective at 6:30 A. M. on Friday, May 16th, thereby announcing to the public generally that a strike had been called and deferring the time of the actual cessation of work to 6:30 A. M. of said May 16th. Moreover, there had been distributed to the employees of the plaintiff in the street in front of the place of business of plaintiff a handbill which carried, among other things, the following wording: "We are ready! If you are with us! do this. If you see a picket sign in front of the Miami Laundry when you arrive for work. Contact one of the Committee who will be at or near the plant. Report immediately at the address below for registration. Musicians Bldg. 542 N. Miami St. Do not go to work and do not return to your home without first being sure to register your name and address at headquarters."

Despite these activities of the defendants all of the employees of the plaintiff appeared for work on May 12, 1947, with the exception of four who were out through sickness, six who were out of the City, and two who did not work, either through intimidation, excitement, or fear to cross the picket lines; that these latter two employees are recent employees of the plaintiff who have advised plaintiff that they are not members of the Union, and who have not participated in any way but who, through fear of possible retaliation have been afraid to cross the picket lines, and have indicated their desire to continue to work. On May 13, 1947, there was no additional absenteeism and no strike is in progress at the plant. None of the employees have indicated to the management of the plaintiff that they are cooperating with the Union or that they intend to go on a strike, or reported any grievance to the management.

The bill concludes with the charge that the defendants by their alleged picketing, distribution of handbills, and other activities, are attempting either to strike, to cause a strike, or to

invite participation in a strike, walkout or cessation of work without said strike, walkout or cessation of work being authorized by a majority vote of the employees to be governed thereby, as required by section 481.09 Florida Statutes, 1941, and that they are pursuing such illegal activities for the purpose of inducing membership in their Union; but that since there can be no legal strike under the circumstances the actions of the defendants amount to an illegal invasion of the property rights of the plaintiff, contrary to the Florida statutes. It charges further that the newspaper articles, the purported radio propaganda, and the distribution of handbills together with the alleged picketing and threats of a strike for Friday, May 16, 1947, are all done as a part of the illegal conspiracy on the part of the defendants to interfere with the orderly operation of plaintiff's business, to create a disturbance, and through the fears and intimidations incident to any alleged labor disturbance to force both the public, who are the general customers of the plaintiff, and the satisfied employees, to believe that there is a labor disturbance or that there will be a cessation of work or a strike to be called.

A motion to dismiss the bill was filed by the defendants and denied by the chancellor. Thereafter the defendants filed their answers admitting the identity of the defendants as stated, the wording of the signs and handbills, and the hours of picketing, and denying the remaining material allegations in the bill of complaint. Upon the issues raised by the bill and answer testimony was taken before a master, and at final hearing the chancellor entered the decree appealed from.

The final decree entered by the chancellor found that the defendants picketed and distributed handbills, as alleged in the bill and admitted in the answer; that there were newspaper and radio announcements made by or through the Union agent that a strike was to occur on May 16, 1947. As a result of the picketing, distribution of handbills, newspaper and radio announcements, all except a few of the employees of the plaintiff went to work; there were none who stayed away to strike or to register with the Union. The activities of the defendants had a certain detrimental influence on plaintiff's business through upsetting employees, disrupting their work,

and, to some degree, by discouraging customers. The pickets were working with and at the instigation of the Union agent and were drawing some compensation for their part in the proceedings and their activities were tied in with the Union's attempt to organize the employees of the plaintiff. The employees do not belong to the Union and there has been no vote by a majority to authorize a strike or work cessation. The presence of the picket signs was the previously announced signs for the strike sought to be induced. Defendants, in acting together for the plainly expressed purpose of bringing about a cessation of work at plaintiff's place of business, were acting in a manner prohibited by State law, because to strike or to foment or induce a strike in the absence of employee majority vote for it is barred by statute. While the picket signs themselves did not so state, the advertisements and public announcements were acts calculated to aid the effort. Viewed together all of the activities engaged in by the defendants acquired the character of the prohibited object which their same made up and consequently the defendants must be enjoined under section 481.09 Florida Statutes 1941.

The injunction order entered by the chancellor based upon these findings was that "the defendants, and each of them, their servants, agents and employees be and they hereby are enjoined and restrained (under section 481.09(3) F.S.A.), in the absence of any authorizing vote of a majority of plaintiff's employees, from resuming, continuing or repeating the acts complained of in the bill or any other such acts inviting, inducing, signalling or advertising or announcing a strike or cessation of work at plaintiff's place or places of business."

On this appeal the appellants pose three questions for adjudication. These questions are, viz:

1. Is section 481.09(3) F.S.A. providing that "It shall be unlawful for any person: (3) to participate in any strike, walkout or cessation of work or continuation thereof, without the same being authorized by a majority vote of the employees to be governed thereby; provided that this shall not prohibit any person from terminating his employment of his own volition," contrary to Amendments I, V, VIII, XIV, and XV of the Constitution of the United States of America?

2. Is the said section 481.09(3), supra, a constitutionally valid prohibition against a threat of strike, or against efforts to organize, or a prohibition against, picketing or against a strike by a minority of employees?

3. Is the right by former discharged employees to picket an employer for the purposes of protesting peremptory discharges and of cooperating, with a union in an organizational drive and to require employer to negotiate with union representatives pertaining to contract, guaranteed by the Federal constitution as an exercise of freedom of speech, freedom of press and lawful assembly?

We do not think that section 481.09 (3) F.S.A. has any application to the facts of the case at bar. That statute purports to make it unlawful for any person "to participate in any strike, walk-out, or cessation of work or continuation thereof without the same being authorized by a majority of the employees to be governed thereby," but none of the necessary elements are present in the case at bar to bring the case within the statute. There is no strike, walkout, or cessation of work being engaged in by *employees* of the plaintiff, nor the slightest evidence that one is contemplated, either with or without a majority vote of the employees to be governed thereby. That the defendants, as union representatives, are attempting by means of peaceful picketing and the display of handbills to persuade the employees of the plaintiff to join their union and thereafter to make demands for higher wages or better working conditions, and, perhaps, to strike to enforce such demands, does not in and of itself make out a case of breach of the statute, or bring the defendants (who are not employees of the plaintiff) within its operation. A careful study of chapter 481 of the Florida Statutes, and particularly subsection 12 and 13 of Section 481.09, Florida Statutes, 1941 (F.S.A.) suggest the conclusion that the Legislature recognized the right of peaceable picketing as provided for in our fundamental law, by the enactment of subsections 12 and 13, viz: It shall be unlawful for any person. . . . (12) To picket beyond the area of the industry within which a labor dispute arises. (13) To engage in picketing by force and violence, or to picket in such a manner as to prevent ingress and egress to

and from any premises, or to picket other than in a reasonable and peaceable manner.

While the chancellor found as a matter of fact that a majority of the members of Local 222, A. F. of L. had not voted in favor of a strike by the employees of Miami Laundry Company at the time of filing the bill of complaint, we think that this finding was immaterial because the facts of the case were not sufficient to invoke the terms and conditions of section 481.09(3), Florida Statutes, supra, and that statute was not material to a settlement of the controversy between the parties.

It follows that the issuance of an injunction on the finding that section 481.09(3) was applicable is erroneous, and that if the injunction order appealed from is to be upheld it must be on other and applicable recognized equitable grounds. Our conclusion on this point makes it unnecessary for us to consider or answer questions 1 and 2 set out above, for they are not responsive to the true issues presented by the pleadings.

Counsel for appellee contends that without regard to section 481.09(3) Florida Statutes, supra, the challenged decree should be sustained under our holding in Retail Clerks Union Local 779, et al. v. Lerner Shops, Inc., 140 Fla. 865, 193 So. 529, decided in December 1939, rehearing denied Feb. 19, 1940. Counsel for the appellants maintain that the Lerner case does not control the case at bar for the reason that subsequent to the Lerner case the Supreme Court of the United States has rendered decisions on the Federal Constitutional aspects of cases similar to the one before us, which have the effect of abrogating the holding of the Lerner case, on Federal Constitutional grounds. We think that the contention of the appellants is well founded.

The case of Thornhill v. Alabama, 310 U.S. 88, 84 L. Ed. 1093, 60 S. Ct. 736, decided April 22, 1940, involved a conviction under an Alabama statute forbidding "loitering and picketing." It was shown that Thornhill was a member of a picket line located close to the place of business of his employer and with others formed a picket line about the plant of employer. Mr. Thornhill, when on picket, stated they "were on a strike, and did not want anyone to go up there to work."

It was a peaceable picketing. The court in holding the statute invalid, said:

"The freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment. . . . Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period.

"In the circumstances of our times the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution. . . .

"The merest glance at state and federal legislation on the subject demonstrates the force of the argument that labor relations are not matters of mere local or private concern. Free discussion concerning the conditions in industry and the causes of labor disputes appears to us indispensable to the effective and intelligent use of the processes of popular government to shape the destiny of modern industrial society. The issues raised by regulations, such as are challenged here, infringing upon the right of employees effectively to inform the public of the facts of a labor dispute are part of this larger problem. We concur in the observation of Mr. Justice Brandeis, speaking for the Court in Senn's case (301 U.S. at 478, 81 L. ed 1236, 57 S. Ct. 857) : 'Members of a union might, without special statutory authorization by a State, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution.'

"It is true that the rights of employers and employees to conduct their economic affairs and to compete with others for a share in the products of industry are subject to modification or qualification in the interests of the society in which they exist. . . . "

"It is not enough to say that Section 3448 is limited or restricted in its application to such activity as takes place at the scene of the labor dispute. (The) streets are natural and proper places for the dissemination of information and

opinion; and one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place. . . "

In the case of American Federation of Labor v. Swing, 312 U.S. 321, 85 L. Ed. 855, 61 S. Ct. 568, decided in 1941, the Supreme Court of the United States reversed an injunction decree entered by the Illinois Supreme Court. The decree had enjoined peaceful picketing by a group of union members because there was no immediate employer-employee relationship or dispute involved. In reversing the Illinois decree the Court said:

"All that we have before us, then, is an instance of 'peaceful persuasion' disentangled from violence and free from 'picketing en masse or otherwise conducted' so as to occasion 'imminent and aggravated danger.' Thornhill v. Alabama, 310 U.S. 88, 105, 84 L. Ed. 1093, 1104, 60 S. Ct. 736. We are asked to sustain a decree which for purposes of this case asserts as the common law of a state that there can be no 'peaceful picketing or peaceful persuasion' in relation to any dispute between an employer and a trade union unless the employer's own employees are in controversy with him.

"Such a ban of free communication is inconsistent with the guaranty of freedom of speech. That a state has ample power to regulate the local problems thrown up by modern industry and to preserve the peace is axiomatic. But not even these essential powers are unfettered by the requirements of the Bill of Rights. The scope of the Fourteenth Amendment is not confined by the notion of a particular state regarding the wise limits of an injunction in an industrial dispute, whether those limits be defined by statute or by the judicial organ of the state. A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. The interdependence of economic interest of all engaged in the same industry has become a commonplace. American Steel Foundries v. Tri-City Central Trades Council, 257 U.S. 184, 209, 66 L. Ed. 189, 199, 42 S. Ct. 72, 27 A.L.R. 360. The right of free communication cannot there-

fore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ. Communication by such employees of the facts of a dispute, deemed by them to be relevant to their interests, can no more be barred because of concern for the economic interests against which they are seeking to enlist public opinion than could the utterance protected in Thornhill's Case . . . " See also Milk Wagon Drivers Union v. Meadowmoor Dairies, Inc., 312 U.S. 287, 85 L. Ed. 836, 61 S. Ct. 552; Bakery Drivers Local v. Wohl, 315 U.S. 769, 86 L. Ed. 1178, 62 S. Ct. 816.

It is our considered view that inasmuch as section 481.09 (3) Florida Statutes is not applicable, and the plaintiff has not shown itself entitled to an injunction under the facts presented by the record, as ruled by the governing decisions of the Supreme Court of the United States on the Federal questions involved, the decree entered by the chancellor must be reversed and the bill of complaint dismissed.

It is so ordered.

THOMAS, C. J., SEBRING and HOBSON, JJ., concur.

TERRELL, ADAMS, and BARNS, JJ., dissent.

TERRELL, ADAMS and BARNS, JJ., dissenting:

We dissent because we are of opinion that the decree should be affirmed on authority of Retail Clerk's Union Local v. Lerner Shops, Inc., 140 Fla. 856, 193 So. 529.