44 So.2d 899 (1950)
LOCAL UNION NO. 519 OF UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF PLUMBING AND PIPEFITTING INDUSTRY OF UNITED STATES AND CANADA,
v.
ROBERTSON.
Supreme Court of Florida, Division B.
March 3, 1950.
*900 Robert H. Givens, Jr., Miami, for appellant.
Jack Kehoe, Miami, for appellee.
SEBRING, Justice.
The defendant below has appealed from a final decree rendered on bill and answer.
The facts of the case as shown by the bill and answer are simple:
The plaintiff is a plumbing and heating contractor whose business activities are carried on in Dade County, Florida. The defendant is a local union with headquarters at Miami. The plaintiff has refused to enter into an exclusive closed shop contract with the defendant under the terms of which the plaintiff will employ as plumbing mechanics only persons who are members of the local union.
In April 1949 the plaintiff was engaged in installing the plumbing equipment and fixtures in two buildings under construction in the same block in Miami, Florida. The plumbing mechanics working for him on the job were non-union men who had been employed to work under terms and conditions, and were receiving wages, comparable to those enjoyed by union mechanics in the area.
On April 1, 1949 the defendant union began picketing the premises with members of the union who paraded up and down in front of the premises carrying umbrellas, signs and placards on which were inscribed, "Unfair to Plumbers L.U. 519."
The answer admits that the only disagreement between the defendant and the plaintiff arises out of the latter's refusal to sign a closed shop contract with the defendant and that the defendant is picketing the premises solely because of plaintiff's refusal to enter into the contract. The answer avers that the picketing is being conducted in a peaceful, peaceable, reasonable manner and not "en masse" or so as to occasion "imminent or aggravated danger"; that the men engaged in picketing are not accosting the plaintiff's employees or other persons; that they are not blocking the entrances or exits of the jobs in question and are not resorting to any form of coercion, force, violence, intimidation or threats.
Upon the pleadings disclosing the foregoing facts the plaintiff moved for a decree on bill and answer under section 40 of the 1931 Chancery Act, which authorizes the entry of a final decree on the pleadings where the bill contains equity and the answer is insufficient as a defense and is not amendable. See Section 63.40, Florida Statutes 1941, F.S.A. As grounds for the motion the plaintiff assigned in the court below and argues here, (1) that under the conceded facts the exclusive closed shop contract proposed by the defendant was illegal under Chapters 481 and 542, Florida Statutes 1941, F.S.A., and was violative of Paragraph 12, Declaration of Rights, Constitution of Florida, F.S.A.; (2) that if he should enter into such an agreement he would become party to a contract against the settled public policy of the State and one which would subject him to civil and criminal penalties in the event he attempted to abide by it; (3) that inasmuch as the admitted facts clearly disclosed that the picket line established by the defendant was "against the property of another and not against nor upon the property whereon is located and established the plaintiff's place of business," the picket line was being maintained in violation of the laws of Florida; (4) that because of the foregoing facts, the picketing *901 being conducted by the defendant was for an unlawful object and hence was enjoinable.
In opposition to the motion the defendant maintained in the court below, and assigns here as the reason for the reversal of the decree, that the proposed contract was not violative of the law of Florida and hence that the picketing, although admittedly conducted for the sole purpose of compelling the plaintiff to execute the contract, was not for an unlawful purpose but was a lawful exercise of the right of freedom of speech guaranteed by the Federal and State Constitutions.
After a full hearing on the motion the chancellor entered the decree appealed from permanently enjoining the defendant, its agents, servants, officers and members "from maintaining a picket line or picketing on any work being done by the plaintiff at any point within the County of Dade and State of Florida" and ordering the defendant "to forthwith remove said picket line and picketing from the premises described in the plaintiff's bill of complaint, to-wit: 3451 Southwest 10th Street, Miami, Florida, and 3450 Southwest 9th Terrace, Miami, Florida."
The ultimate question on the appeal is whether the constitutional guarantees of freedom of speech are denied the defendant union by an injunction which prohibits peaceful picketing by its members for the sole purpose of compelling an employer to enter into an exclusive closed shop agreement with the union, where no dispute relating to wages, hours or conditions of labor exists between the employer and his non-union employees, and where no such dispute, or employer-employee relationship, exists between the members of the union and the employer.
Section 12 of the Declaration of Rights, Constitution of Florida, as amended in November 1944, F.S.A., declares, among other things: "The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union, or labor organization; provided, that this clause shall not be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer."
Chapter 21968, Laws of Florida 1943, enacted in furtherance of what we think was the general objective of amended section 12 of the Declaration of Rights, provides, in part:
"Section 1. Because of the activities of labor unions affecting the economic conditions of the country and the State, entering as they do into practically every business and industrial enterprise, it is the sense of the Legislature that such organizations affect the public interest and are charged with a public use. The working man, unionist or non-unionist, must be protected. The right to work is the right to live.
"It is here now declared to be the policy of the State, in the exercise of its sovereign constitutional police power, to regulate the activities and affairs of labor unions, their officers, agents, organizers, and other representatives, in the manner, and to the extent hereafter set forth." See Section 481.01, Florida Statutes 1941, F.S.A.
"Section 3. Employees shall have the right to self-organization to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection." See Section 481.03, Florida Statutes 1941, F.S.A.
"Section 9. It shall be unlawful for any person: * * * (11) To coerce or intimidate any employee in the enjoyment of his legal rights, including those guaranteed in Section 3 of this Act [§ 481.03] or * * * (12) To picket beyond the area of the industry within which a labor dispute arises." See Section 481.09, Florida Statutes 1941, F.S.A.
"Section 14. Any person or labor organization who shall violate any of the provisions of this Act, shall, upon conviction thereof, be adjudged guilty of a misdemeanor and be punished by a fine not exceeding Five Hundred Dollars ($500.00) or by imprisonment in the county jail for not to exceed six months, or by both such fine *902 and imprisonment." See Section 481.14, Florida Statutes 1941, F.S.A.
By these provisions of the Constitution and the statutes the public policy of the State of Florida with respect to labor activities and labor opportunities has been set forth and defined. Under these provisions it is the declared public policy of the State that all working men, whether union or non-union, shall be considered on an equal footing with respect to labor opportunities. They are guaranteed complete freedom of decision in whether to join or refrain from joining any labor organization. No person or organization may deny them the right of obtaining or retaining employment, nor may the right be abridged, by reason of membership or nonmembership in any labor organization. They are not to be coerced or intimidated in the enjoyment of their legal rights, including the right of free decision as to whether or not they will join a union, and any person or labor organization who so coerces or intimidates them is to be deemed guilty of a crime punishable by fine or imprisonment, or both.
That such provisions of the law as we have quoted do not infringe the freedom of speech provision of the Federal Constitution has been settled by the Supreme Court of the United States. See Lincoln Federal Labor Union No. 19129, A.F. of L. v. Northwestern Iron & Metal Co. and Whitaker v. State of North Carolina (2 cases disposed of in one opinion), 335 U.S. 525, 69 S.Ct. 251, 6 A.L.R.2d 473; American Federation of Labor v. American Sash & Door Co., 335 U.S. 538, 69 S.Ct. 258, 6 A.L.R.2d 481.
In the first case cited above, a Nebraska constitutional amendment and a North Carolina statute were made the respective subjects of challenge by a labor organization and certain of its officers. Each of the laws under attack provided that no person in the state to which the law was applicable should be denied the opportunity to retain employment because he was or was not a member of a labor organization, and each contained a provision (which is not present in our own law but which we think is implicit in its provision) that contracts or agreements by which employers obligated themselves to exclude persons from employment because they were or were not labor union members were forbidden. The ground of the challenge was that insofar as the laws attempted to protect non-union members from discrimination, they infringed the rights of freedom of speech, assembly and petition guaranteed labor organizations and their members by "the First Amendment and protected against invasion by the state under the Fourteenth Amendment." [335 U.S. 525, 69 S.Ct. 253]
In rejecting the claim that the constitutional amendment and the statute infringed the freedom of speech provisions of the Federal Constitution the Supreme Court of the United States said:
"Under the state policy adopted by these laws, employers must, other considerations being equal, give equal opportunities for remunerative work to union and non-union members without discrimination against either. * * * Nothing in the language of the laws indicates a purpose to prohibit speech, assembly, or petition. Precisely what these state laws do is to forbid employers acting alone or in concert with labor organizations deliberately to restrict employment to none but union members.
"It is difficult to see how enforcement of this state policy could infringe the freedom of speech of anyone, or deny to anyone the right to assemble or to petition for a redress of grievances. * * * There cannot be wrung from a constitutional right of workers to assemble to discuss improvement of their own working standards, a further constitutional right to drive from remunerative employment all other persons who will not or can not, participate in union assemblies. The constitutional right of workers to assemble, to discuss and formulate plans for furthering their own self interest in jobs cannot be construed as a constitutional guarantee that none shall get and hold jobs except those who will join in the assembly or will agree to abide by the assembly's plans. For where conduct affects the interest of other individuals and the general public, the legality of that conduct must be measured by whether the *903 conduct conforms to valid law, even though the conduct is engaged in pursuant to plans of an assembly."
What has been said by the Supreme Court with respect to the Federal law would seem to apply with equal force to our own constitutional provisions. Though section 13 of the Declaration of Rights provides that "Every person may fully speak and write his sentiments on all subjects being responsible for the abuse of that right, and no laws shall be passed to restrain or abridge the liberty of speech, or of the press", the section must necessarily be construed to harmonize with other provisions of the same document, including section 1 which asserts that "All men are equal before the law, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing happiness and obtaining safety", and Section 12 which prescribes that "The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union * * *."
In the face of the fixed public policy of this State as asserted in the constitutional provision and statutes we have quoted, the defendant union sought a closed shop contract from an employer who did not wish to employ union labor exclusively, and whose employees were perfectly satisfied with the wages, hours and conditions under which they were working and had no desire to become affiliated with the union or to designate it as their bargaining representative. The defendant union, failing in its efforts to secure such a contract amicably, resorted to picketing a construction job upon which the employer was under contract to install plumbing equipment and fixtures, not for the purpose of bettering the wages, hours or conditions under which the employees were working (for the union admittedly had no dispute with the employer on that score) but for the sole purpose of coercing the employer into signing a closed shop contract to which he did not want to become a party and which would necessarily require him in its performance either to discharge his nonunion employees or compel them as a condition to further employment to become members of the union.
We can think of no situation more repugnant to the spirit of the declared public policy of the state than this, nor one more likely to appeal to the considerations of a court of conscience. In either course open to the employer under the facts of the case, he stood to suffer injury. If he refused to execute the contract with the union he faced the possible consequence of damage to his business as the result of picketing and other means of labor organization sanctions and pressure. If he executed the contract and then in its fulfillment turned his employees out because they were not members of the union, or required them against their will to become members of a union as a condition to further employment, he would face the possibility of a criminal prosecution for coercing or intimidating his employees in the enjoyment of their legal rights, including the right of free choice whether to join or not join a union. Furthermore, he would face the possibility of a civil suit for damages by the discharged employees, for by discharging them on account of failure to become union members he would certainly be guilty of denying or abridging their constitutional right to work. See Miami Laundry Co. v. Laundry, Linen, Dry Cleaning Drivers, Salesmen & Helpers, Local Union No. 935, Fla., 41 So.2d 305.
Under these circumstances we think that the chancellor acted correctly in entering the injunctive decree appealed from. The fact that the picketing being conducted by the union was peaceful can have no effect upon our conclusion. A state is not required to tolerate in all places and situations picketing by an individual, or group of individuals, for even peaceful picketing is not beyond legislative control. Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; Carlson v. People of State of California, 310 U.S. 106, 60 S.Ct. 746, 84 L.Ed. 1104; Bakery and Pastry Drivers and Helpers, Local 802 of *904 I.B.T. v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178, Carpenters and Joiners Union of America, Local No. 213 v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143; Giboney v. Empire Storage and Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. ___.
Like the strike, picketing is legal only to the extent that its purposes are within the allowable ambit of legitimate labor activity. In the present case it is conceded by the defendant that no labor dispute existed between the employer and the union, in the commonly understood sense of the term. The avowed immediate object of the picketing by the union was to compel the employer to enter into a closed shop contract obligating him to pursue a course of conduct at variance with the settled public policy of the state and one which would subject him to criminal and civil penalties.
We hold that under the facts of the case the picketing was in pursuance of an unlawful object, and hence was enjoinable. This holding is not in conflict with our previous holdings in Whitehead v. Miami Laundry Co., 160 Fla. 667, 36 So.2d 382; Moore v. City Dry Cleaners and Laundry, Inc., Fla., 41 So.2d 865; Johnson v. White Swan Laundry, Fla., 41 So.2d 874, and related cases.
From the conclusions reached it follows that the decree appealed from should be affirmed.
It is so ordered.
ADAMS, C.J., and CHAPMAN and HOBSON, JJ., concur.