59 So.2d 366 (1952)
HOTEL & RESTAURANTS EMPLOYEES' & BARTENDERS' UNION LOCAL NO. 156, AMERICAN FEDERATION OF LABOR,
v.
COTHRON et al.
Supreme Court of Florida, Special Division B.
June 3, 1952.
J.W. Brown, Cincinnati, Ohio, J.Y. Porter, IV, Key West, and Gramling & Gramling, Miami, for appellant.
Julius F. Stone, Jr., Key West, and J. Tom Watson, Tampa, for appellees.
MATHEWS, Justice.
This is an appeal from a final decree enjoining appellant labor union and its agents, members and employees from picketing a place of business of the appellees. The bill of complaint alleged that on or about the 10th of November, 1950, the appellant approached the appellees and requested them to sign a contract with it. The contract was set forth in full in the bill of complaint and, among other things, said contract contained the following:
"Section 1. (a) The employer agrees to employ and to retain in his employ only such persons who are members in good standing of the union. *367 The employer agrees to engage both steady and extra employees directly from the office of the union.
"Section 2. All newly engaged employees shall report to the union employment office and register with the union office within forty-eight) (48) hours after being employed."
The bill then alleged that the picketing started about December 1, 1950, and was continuing at the time of the filing of the bill of complaint on the 6th day of December, 1950. The bill specifically alleged that the picketing "is for the purpose of forcing these complainants to sign the contract containing the provisions heretofore quoted"; "that said contract provides for what is known as a closed shop"; "those that are being relied upon in support of the equities sought in this bill are the closed shop provisions"; "complainants allege that because of the illegality in such contract so described, and because the picketing is in support thereof, they are entitled to relief from this Court against the continuation of such picketing."
It will, therefore, be observed that the appellees bottomed their case solely and exclusively on the proposition that the picketing was unlawful because it was for an unlawful objective, to wit, to force a closed shop agreement.
The appellants denied specifically these material allegations of the bill of complaint and then allege in their answer:
"* * * the truth to be that the controversy now existing between the Complainant and the defendant is in no manner concerned with whether or not the complainant desires or does not desire to sign the Agreement with this defendant partially referred to in paragraph II of said complaint, or any other Contract, Agreement or understanding, but is wholly due to the action of the complainant, Berlin Felton, his discharging from employment at the said A & B Lobster House, members of the defendant's organization because of their Union affiliation."
The answer also contains the following paragraph:
"Having made full, true and complete Answer to the Bill of Complaint under oath, your defendant respectfully represents unto this Honorable Court that the plaintiffs are guilty of having discharged from employment at the said A & B Lobster House, members of the defendant's organization because of their Union affiliation, notwithstanding the Constitutional rights of said employees as guaranteed by Article 12 of the Bill of Rights of the Constitution of the State of Florida [F.S.A.]."
The bill and answer presented clear-cut issues. If as alleged in the bill of complaint, the picketing was for an unlawful purpose in that the object was to force or coerce the appellees to sign a closed shop agreement, the injunction should have issued under the authority of Local Union No. 519 v. Robertson, Fla., 44 So.2d 899.
After voluminous testimony heard before the Chancellor, he issued an order granting a temporary injunction on the 21st day of February, 1951, in which order he made certain definite findings of fact as follows:
"c. That the Defendants did on or about November 10, 1950 approach complainants with a labor contract which the Complainants have not signed.
"d. That the defendant did on the morning of the 1st of December, 1950 start picketing the Complainants' place of business.
"e. That the Complainants had reason to believe that the picketing was in order to force them to sign the contract mentioned in the Bill of Complaint especially inasmuch as the testimony shows that the Complainants did not until the evening of December 1, 1950 learn the reason for the picketing was the firing of all union employees numbering three.

"f. That the Complainants did not have a legal and valid reason for the firing of all the union employees numbering three, to-wit: Elizabeth (Betty) Moore, Emily Roberts and Kitty Moore, but neither the said union employees *368 nor any authorized person in their behalf has requested Complainants to re-hire them and the Court is of the opinion that before picketing was started by the Defendant, the Complainants should have been advised of the reasons for the impending picketing and given an opportunity to remedy the cause if they saw fit; wherefore * * *."
On the 27th day of November, 1951, the Chancellor entered a final decree upon the motion of the appellees, which final decree was based upon his findings of fact set forth in the order of the 21st day of February, 1951, reading as follows:
"This cause came on for hearing on Motion of the Complainants for the entry of Final Decree herein and the Complainants and Defendant having waived the right to notice of hearing and presentation of a Motion for Final Decree, and the Court being fully advised in the premises, it is therefore
"Ordered, Adjudged and Decreed that the restraining order heretofore entered in this cause be and the same is made permanent and the injunction issued in said order be and the same hereby is made permanent subject, of course, to dissolution in the future in the light of changed circumstances presenting a new and different case."
It should be noted that there is no finding of fact by the Chancellor that the appellant at any time requested or demanded that the appellees sign the contract set forth in the bill of complaint. The Chancellor did find that the appellees "had reason to believe that the picketing was in order to force them to sign the contract." There is a vast difference between the allegations of the bill of complaint that the picketing "is for the purpose of forcing these complainants to sign the contract containing the provisions heretofore quoted", and the findings of the Chancellor that the appellees simply "had reason to believe that the picketing was in order to force them to sign the contract."
It should also be noted that the picketing began on December 1, 1950, and the bill of complaint was not filed until December 6, 1950. The Chancellor specifically found, "the testimony shows that the complainants did not until the evening of December 1, 1950, learn the reason for the picketing was the firing of all Union employees numbering three." In other words, there is a specific finding of fact by the Chancellor that on December 1, 1950, six days before the filing of the bill of complaint, the appellees actually knew that the reason for the picketing was the firing of all union employees. The very fact that the Chancellor did not find that the picketing was for the purpose of forcing the appellees to sign the contract but that it was for the reason of the firing of all union employees is the equivalent of saying that the appellees had failed to prove their case and that the appellants had proven the material allegations of their answer, and that at the time of the filing of the bill of complaint, the appellees knew that the reason for the picketing was not as alleged in their bill of complaint, but was because of the firing of all union employees.
This case is entirely different from that of Local Union No. 519 v. Robertson, supra. In that case no labor dispute existed between the employer and the union and the avowed and admitted purpose of the picketing by the union was to compel the employer to enter into a closed shop contract "obligating him to pursue a course of conduct at variance with the settled public policy of the state and one which would subject him to criminal and civil penalties."
Picketing is legal to the extent that its purposes are within the allowable ambit of labor activity. Peaceful picketing, as an expression of freedom of speech, and when it is not for an unlawful purpose, is protected by State and Federal Bill of Rights. Whitehead v. Miami Laundry Co., 160 Fla. 667, 36 So.2d 382; Moore v. City Dry Cleaners & Laundry, Inc., Fla., 41 So.2d 865; Johnson v. White Swan Laundry, Inc., Fla., 41 So.2d 874.
The appellees strongly urge that we cannot consider the order made on February 23, 1951, because the appeal is not prosecuted from that order but is prosecuted from the final decree of November 27, 1951. There is no merit in this contention. The *369 final decree was based upon the findings of fact made by the Chancellor February 23, 1951, and in order to determine the correctness of the final decree, it is necessary that we review and consider the findings of fact upon which the final decree was based.
There is no issue in the case at bar as to manner or the method of picketing. There is no contention that it was not peaceful, or that it was accompanied by violence. The only real contentions are:
1. The appellees alleged in their bill, at the time that it was filed, that the purpose of the picketing was to force or coerce them to sign a closed shop contract which was illegal.
2. In the answer of the appellants this material allegation of the bill of complaint was denied and it was asserted that the reason for the picketing was the unlawful discharge of the employees of the appellees who were members of the union.
From the findings of fact set forth by the Chancellor in his order of February 23, 1951, it appears that he found: (1) prior to December 1, 1950, the appellees had reason to believe that the picketing was for the purpose of forcing them to sign a closed shop contract; (2) that on December 1, 1950, six days before the filing of the bill of complaint, the appellees learned that the picketing was because of the firing of all union employees, and that, therefore, at the time of the filing of the bill of complaint, the appellees knew that the purpose of the picketing was not in order to force or coerce them to sign a closed shop contract; and (3) that the appellees did not have a "legal and valid reason for the firing of all of the Union employees." Only union employees were fired.
Although there was some conflict in the testimony, it was more than sufficient to justify the findings of fact of the Chancellor and such findings of fact will not be disturbed by this Court on appeal. See Gordon v. Citizens & Southern Nat'l Bank of Atlanta, Fla., 56 So.2d 531; Moorer v. Putnam Lumber Co., 152 Fla. 520, 12 So.2d 370; Gables Racing Association v. Persky, 148 Fla. 627, 6 So.2d 257; Travis v. Travis, 81 Fla. 309, 87 So. 762; Sandlin v. Hunter Co., 70 Fla. 514, 70 So. 553.
It appears that the Chancellor either misconstrued or misapplied the law to the facts as he found them in entering the injunction. The Chancellor stated that "Complainants should have been advised of the reasons for the impending picketing and given an opportunity to remedy the cause as they saw fit." This was no reason to grant an injunction in this case. There is no rule, regulation, or law of this State which requires a notice to the employer of the reasons for an impending strike, as a prerequisite to picketing, and the Courts are without power to supply such rule, regulation or law. The advisability or necessity for such is for legislative determination and not for the courts.
Reversed, with directions to dissolve the injunction and dismiss the bill of complaint.
SEBRING, C.J., ROBERTS, J., and REVELS, Associate Justice, concur.