61 So.2d 753 (1952)
MIAMI TYPOGRAPHICAL UNION NO. 430, et al.
v.
ORMEROD et al.
Supreme Court of Florida, Division A.
December 12, 1952.
Leonard G. Egert, Claude Pepper Law Offices, Pepper, Lefevre, Orr & Faircloth, Miami, for appellants.
Loftin, Anderson, Scott, McCarthy & Preston, Robert H. Anderson and D.P.S. Paul, Miami, for appellees.
HOBSON, Justice.
The Chancellor who entered the final decree in this cause personally heard and observed the witnesses as they testified. In and by his final decree he permanently enjoined appellants from "(1) Threatening, molesting, assaulting, interfering with or intimidating the plaintiffs or any of them or their families, coercing or attempting to coerce the plaintiffs or any of them in their employment, committing or perpetrating any act of violence whatsoever or threats thereof against the plaintiffs or any of them or their families, bombing the property of plaintiffs or the places where they live whether owned by them or not, or the places where they are employed, or committing any act of malicious mischief toward the plaintiffs or any of them or their families, their property, or the place or places where they are employed. (2) Picketing plaintiffs' place of employment at 200 South Miami Avenue, Miami, Dade County, Florida."
It is contended by appellants that there is in this record no competent substantial evidence which establishes the fact that the many acts of violence and intimidation which were disclosed by the evidence, were done or perpetrated by any of the appellants. It is further contended that there is no justification upon a proper evaluation of the evidence for the entry of a permanent injunction restraining the appellants from peaceful and lawful picketing.
It is true that there is no evidence which directly connects any of the appellants with the acts of violence by *754 positively identifying any or all of them as the perpetrators thereof. However, we conclude upon this point that there is in the record competent substantial evidence from which the Chancellor was justified in drawing the reasonable inference that appellants were responsible for such acts of violence. We need not, but for the convenience of the bar will, cite authority for the well-established rule that this Court will not substitute its judgment for findings of facts made by the Chancellor, who by law is charged with the duty and responsibility of evaluating the evidence, if there is in the record any competent substantial evidence which sustains such findings of facts or from which such findings flow as logical and reasonable inferences. Harmon v. Harmon, Fla., 40 So.2d 209; Hamilton v. Laesch, 134 Fla. 591, 184 So. 110 and cases cited therein; Guerra v. Quiterrez, 66 Fla. 570, 64 So. 232; Mock v. Thompson, 58 Fla. 477, 50 So. 673. See also U.S. Casualty Co. v. Maryland Casualty Co., Fla., 55 So.2d 741. This rule is particularly applicable when the Chancellor personally hears the testimony of all the witnesses.
The position taken by counsel for appellants that all of the acts of violence and intimidation, as well as all threats, occurred, if at all, prior to, and at a time too remote from, the institution and trial of this case to justify a permanent injunction against peaceful and lawful picketing and that very few threats or acts of intimidation were made or performed at or near the picket line or the business establishment of the Miami Herald with which organization the appellants had labor disputes, has given us more concern than did appellants' first contention. However, we have concluded the Chancellor was correct in this suit brought by 133 employees to protect their right to work without joining any union, in deciding that the picketing was not for the purpose of informing the public of the differences which probably exist between the Union and the Miami Herald, but that the real purpose of the picketing was unlawful in that it was designed to force an employer to coerce its employees to join the appellant Union or to designate it as their bargaining agent. See Local Union No. 519 v. Robertson, Fla., 44 So.2d 899 and Building Service Employers' International Union v. Gazzam, 1950, 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 1045, reported again on rehearing denied in 339 U.S. 991, 70 S.Ct. 1019, 94 L.Ed. 1391; Wilbank et ux. v. Chester & Delaware Counties Bartenders, Hotel and Restaurant Employees Union, Local No. 677-A.F. of L., 1948, 360 Pa. 48, 60 A.2d 21, 23. The picket line was not established, nor did it exist for the purpose of influencing public opinion. The placards or signs carried by the members of the Union of their agents who displayed them conveyed no "information concerning the facts of a labor dispute." Typical of the messages conveyed by the signs, which it is obvious were not intended for the information of the general public, are the following:
 "Geo. Shade, Sr.
 219 N.W. 58th St.
 SCABBING
 at Miami Herald
 Where Union Printers
 Have Been On
 STRIKE,
 Over 2 Years"
 "C.J. Watters
 4401 S.W. 14th St.
 SCABBING
 at Miami Herald
 Where Union Printers
 Have Been On
 STRIKE
 Over 2 Years."
The only purpose of the picket line other than that set forth above was to intimidate, threaten and annoy the plaintiffs to the end that they would be prevented from freely and properly carrying on their work and thus cause them to join the Union, designate it as their agent, or quit their jobs in disgust  imbued with righteous indignation and a confused if not a rebellious attitude toward laws which they know should protect them in their right to work but which they fear might protect the aforementioned conduct of others under the subterfuge of the guaranty of freedom of speech.
*755 When picketing is carried on to further an unlawful purpose, as was correctly determined in this case, it loses its characteristic of free speech which is guaranteed by the First Amendment to the Federal Constitution. It becomes, as was stated by Professor Gregory in his work on Labor and the Law, cited with approval by the U.S. Supreme Court in the case of Hughes v. Superior Court of State of Calif., 1950, 339 U.S. 460, 464, 465, 70 S.Ct. 718, 94 L.Ed. 985, "simply a species of coercion traveling under the guise of speech for the purpose of enjoying constitutional immunity * * *." In the case of International Brotherhood of Teamsters v. Hanke, 1950, 339 U.S. 470, 474, 70 S.Ct. 773, 775, 94 L.Ed. 995, 13 A.L.R.2d 631, rehearing denied 339 U.S. 991, 70 S.Ct. 1018, 94 L.Ed. 1391, Mr. Justice Frankfurter said, and we quote with approval, "We must start with the fact that while picketing has an ingredient of communication it cannot dogmatically be equated with the constitutionally protected freedom of speech." In this case it is clear that the protection accorded free speech was forfeited by appellants.
In the long, long ago and until comparatively recent years it was true that labor was classified as a "poor, weak, helpless and oppressed" group. In such situation it was evident that labor in all fairness needed protection against oppression foisted upon it by the "rich and powerful." Everyone should commend with highest praise the changes which have been wrought by organized labor for the benefit of this the largest segment of our populace. Nevertheless, it is to be hoped that the admonition ascribed to the late William Green, President of A.F. of L., struck a responsive chord when he reputedly stated in effect that organized labor should be proud of the fact that it had swung the pendulum to mid-center to the end that fairness to one as to the other has become the criterion for both employer and employee but that labor should be ever alert never to become unduly ambitious and in a moment of over-enthusiasm swing the pendulum beyond midpoint because such conduct might result in public sentiment, which is now favorable to labor, executing an about-face. May the day never come when this sound advice so timely given is forgotten for in such event the observation, which we liken unto a theorem, that "the `rich and powerful' oppressor may be a labor union, as well as an employer * * *,"[1] would become entitled to the geometric symbol Q.E.D.  quod erat demonstrandum.
We conclude that no error was committed by the Chancellor in entering the final decree and permanent injunction contained therein. Consequently, said decree should be, and it is hereby, affirmed upon the authority of cases cited herein, supra, and Moore v. City Dry Cleaners & Laundry, Inc., Fla., 1949, 41 So.2d 865. See also Milk Wagon Drivers Union v. Meadowmoor Dairies, Inc., 1941, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836, 132 A.L.R. 1200.
Affirmed.
SEBRING, C.J., and TERRELL and THOMAS, JJ., concur.
NOTES
[1] Dolan Dining Co., Inc. v. Cooks' and Assistants' Union, Local No. 399, A.F. of L., 1938, 124 N.J. Eq. 584, 4 A.2d 5.