83 So.2d 11 (1955)
BOCA RATON CLUB, Inc., a Florida corporation, and Hildemart Corporation, a Florida corporation, Petitioners,
v.
HOTEL EMPLOYEES UNION, LOCAL NO. 255 (A.F. of L.), and Albert H. Berlin, Clarence L. Smith and Henry Mischel, as Business Agents and Officers thereof, Respondents.
SORRENTO HOTEL CORP., a Florida corporation, Petitioner,
v.
HOTEL EMPLOYEES UNION, LOCAL NO. 255 (A.F. of L.), and Albert H. Berlin, Clarence L. Smith and Henry Mischel, as Business Agents and Officers thereof, Respondents.
Harry LEVY, Mark Allen Levy Trust, Erwin J. Fried, General Operating Co., Alex T. Spare, Morris Lansburgh Co., James Paulen, Alvin C. Richter, Albert Green, *12 Chester and Sally Krone, Harry A. Levy, Irrevocable Trust, Minnie Ginsbert, Jerome Granger, doing business as the Sherry Frontenao Hotel, Petitioners,
v.
HOTEL EMPLOYEES UNION, LOCAL NO. 255 (A.F. of L.), and Albert H. Berlin, Clarence L. Smith and Henry Mischel, as Business Agents and Officers thereof, Respondents.
LEEVLANDS CORPORATION, Petitioner,
v.
HOTEL EMPLOYEES UNION, LOCAL NO. 255 (A.F. of L.), and Albert H. Berlin, Clarence L. Smith and Henry Mischel, as Business Agents and Officers thereof, Respondents.
MONTE CARLO, INC., Petitioner,
v.
HOTEL EMPLOYEES UNION, LOCAL NO. 255 (A.F. of L.), and Albert H. Berlin, Clarence L. Smith and Henry Mischel, as Business Agents and Officers thereof, Respondents.
2500 COLLINS AVENUE CORPORATION, a Florida corporation, Petitioner,
v.
HOTEL EMPLOYEES UNION, LOCAL NO. 255 (A.F. of L.), and Albert H. Berlin, Clarence L. Smith and Henry Mischel, as Business Agents and Officers thereof, Respondents.
Supreme Court of Florida, en Banc.
October 19, 1955.
*13 W.G. Starry, Tallahassee, Sibley & Davis, and Thomas H. Barkdull, Jr., Miami Beach, for petitioners.
J. Carrington Gramling, Miami, Warren, Klein & Moore, Miami Beach, and J.W. Brown, for respondents.
HOBSON, Justice.
In Sax Enterprises, Inc., v. Hotel Employees Union Local No. 255, Fla., 80 So.2d 602, we decided a prior aspect of the matter which the cases now under consideration bring before this court. In the Sax case we held on the basis of the showing made that it was error to deny a temporary restraining order against the picketing of the Saxony Hotel. The injunctive relief which was granted as a result of our mandates in the Sax case and in the instant cases related to picketing and the publicity measures used by the defendant-respondent union in connection therewith. Subsequently defensive pleadings were filed and further testimony taken upon motions of the respondents to dissolve and vacate the temporary injunctions issued pursuant to the mandates of this court. The chancellors below have issued orders of identical effect in all of these cases, granting the motions and dissolving and vacating the temporary injunctions.
Although the parties have attempted to present a multitude of issues in these cases, we are of the view that the only issues really involved are whether (1) the respondent union complied with the prerequisites to lawful picketing outlined in our opinion in the Sax case, supra, and (2) whether the picketing was for a lawful or unlawful purpose.
The chancellors found in substance that before the picketing commenced, the union did in fact represent some of the employees although less than a majority; that the union informed the petitioners of its desire to engage in negotiations, and that the petitioners used evasive tactics amounting to a refusal to negotiate or bargain. No one of the chancellors, however, made a finding that the union had, prior to the *14 picketing, established by evidence of substantial character that any of the employees had chosen it as their representative.
Respondents contend that: the findings which were made are supported by competent substantial evidence; such findings in effect established the truth of the message contained in the cards which were displayed by the pickets, and which we reproduced in the Sax case, supra; the matter thus resolves itself into a situation where peaceful picketing has been carried on with the objective of accurately publishing the facts of a labor dispute, which is a lawful purpose within the doctrine of Whitehead v. Miami Laundry Co., 160 Fla. 667, 36 So.2d 382, and Johnson v. White Swan Laundry, Inc., Fla., 41 So.2d 874.
Petitioners take the position that the respondent union failed to prove compliance with the prerequisite to lawful picketing set forth in the Sax opinion, of establishing "that the employees have chosen it as their representative."
In our opinion in the Sax case we said [80 So.2d 603]:
"Without doubt a labor organization has the right to engage in peaceful picketing of an employer's premises when predicated upon the refusal of the employer to recognize and negotiate with the union as the representative of such employer's employees. In order for such picketing to be lawful, the union must establish that the employees have chosen it as their representative, Treasure, Inc., v. Hotel & Restaurant Employees and Bartenders' Union, supra [Fla., 72 So.2d 670], and the labor organization must also inform the employer of the object to be accomplished by the picketing and afford to the employer a fair opportunity to engage in negotiations. See North East Texas Motor Lines, Inc., v. Dickson, 148 Tex. 35, 219 S.W.2d 795 [11 A.L.R.2d 1065]."
Respondents say that the above pronouncements were nothing more than obiter dicta and that in any event they run counter to the established law of this jurisdiction. They cite our opinion in Hotel & Restaurants Employees' & Bartenders' Union Local No. 156, A.F. of L. v. Cothron, Fla., 59 So.2d 366, 369, from which we quote:
"It appears that the Chancellor either misconstrued or misapplied the law to the facts as he found them in entering the injunction. The Chancellor stated that `Complainants should have been advised of the reasons for the impending picketing and given an opportunity to remedy the cause as they saw fit.' This was no reason to grant an injunction in this case. There is no rule, regulation, or law of this State which requires a notice to the employer of the reasons for an impending strike, as a prerequisite to picketing, and the Courts are without power to supply such rule, regulation or law. The advisability or necessity for such is for legislative determination and not for the courts."
We face this contention of respondents forthrightly. Our opinion in the Cothron case does indeed appear to be contrary to our statement in the Sax case, supra, to the effect that as a prerequisite to lawful picketing "the labor organization must also inform the employer of the object to be accomplished by the picketing". It might be said that the underlying reason for our ruling in the Cothron case is a sound basis for recanting our pronouncement as to the other two prerequisites to lawful picketing outlined in the Sax opinion. We have given careful consideration to the apparent conflict between these two cases and have concluded that although there may exist "no rule, regulation or law of this State which requires" the foregoing prerequisites to lawful picketing, certainly honesty of purpose, fair dealing and a sound public policy demand them. Moreover, Sec. 447.03, F.S., F.S.A., grants unto employees the right to "self-organization" (Italics supplied) and "to bargain collectively through representatives of their own choosing" (Italics supplied). It seems clear that before being required to enter into negotiations with an alleged bargaining agent an employer should be shown by evidence of substantial character that his employees, *15 or at least some of them, have voluntarily exercised the rights accorded them by our statute. Hence we deem it appropriate for the courts to fix reasonable and fair prerequisites to the end that, rather than economic strife, there may exist peaceful accord of labor disputes so necessary in the interest of the common weal.
The placards displayed by the pickets carried the following words: "This hotel refused to negotiate with Hotel Employees Union, Local No. 255, American Federation of Labor, 1575 Washington Avenue, Miami Beach". This language unquestionably connotes to the "common mind" a compliance with all prerequisites to lawful picketing, i.e., a pre-existing honest and forthright attempt to bring about negotiations between an authorized bargaining agent and the employer because of a bona fide labor dispute between employee and employer and a fair opportunity to engage in negotiations. It is clear that such an opportunity cannot be said to exist until and unless the employer is first assured by evidence of substantial character that if he negotiates he will do so with an authorized bargaining agent. The words on the placards "refused to negotiate" necessarily presuppose an opportunity to negotiate. Surely no one can doubt that such opportunity should be a "fair" opportunity. The placards did not speak the truth in all its stark significance or give to the public actual facts concerning a labor dispute. Indeed, so far as this record shows petitioners, except for the uncorroborated representations of a putative bargaining agent, never, prior to the most recent hearing in the circuit court, knew as a matter of fact that their employees were actually dissatisfied and had, because of such dissatisfaction, designated the respondent as their bargaining agent. It follows, as night the day, that without such knowledge they could not know that a labor dispute existed nor, indeed, would a labor dispute normally come into being without some dissatisfaction on the part of the employees. No dispute of any kind or character can exist unless the parties said to be involved know that there is actually disagreement between them.
Moreover, it is the duty of the employer to treat only with the employees' true representative and the unsupported statement of a labor organizer is an insufficient showing to justify the employer in dealing with the alleged bargaining agent. In Texarkana Bus Co. v. National Labor Relations Board, 8 Cir., 119 F.2d 480, 484, the court stated, and we quote with approval:
"The employer can not be required to devote his time to negotiating with every individual claiming to represent a bargaining unit, and can not be charged with unfair practice in this regard unless there is presented to him evidence of a substantial character showing that the representative is in fact an authorized bargaining agency."
Although the court was there dealing with the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., which does not "require an employer to bargain collectively with a union which has not been designated by a majority of the employees in an appropriate unit" (Italics supplied), nevertheless the rationale of the opinion in that case is equally applicable here. This is so because there is no rule, regulation or law of this State of which we are cognizant which requires an employer to bargain collectively with a union which has not been designated by at least some of the employees in an appropriate unit. The Circuit Court of Appeals of the Eighth Circuit in the last cited case said, and we again quote with approval:
"As the employer must act at his peril in recognizing a representative, common prudence dictates that he refrain from acting until satisfactory proof is produced that the representative in fact speaks for a majority of the employees." 119 F.2d 480, 484.
It is deemed appropriate to observe that we have outlined prerequisites to lawful picketing and it is not sufficient to establish, even in court, after picketing is a reality that the putative bargaining agent had in fact, prior to picketing, been so designated by an insignificant number *16 or, for that matter, a majority of the employer's employees.
We hold herein that as prerequisites to lawful picketing the union must establish by some evidence of substantial character that at least some of the employees have chosen it as their representative and "afford to the employer a fair opportunity to engage in negotiations", any pronouncement in the Cothron case to the contrary notwithstanding. We might add that we deem it necessary in order to afford to the employer a fair opportunity to engage in negotiations that the labor organization inform the employer of the subjects intended for negotiation.
The picketing of petitioners' places of business by the respondent union under the facts and circumstances of these cases and upon the basis that petitioners refused to negotiate with the union is the unlawful use of economic pressure to coerce the petitioners into negotiations with an alleged agent who failed and refused as required by law and just dealing timely and appropriately to establish his authority. Hence the picketing is for an unlawful purpose.
Respondents, however, say the petitioners knew that certain organizers, particularly the respondent Mr. David Herman, had attempted to persuade the employees to designate respondent union as their bargaining agent or to join the union, as is evidenced by the fact that the employers endeavored to dissuade the employees from taking either action. Such circumstance falls far short of establishing as a matter of fact that the employees had pursued either course and it assuredly does not prove that the employers knew that the employees, or any of them, had actually so designated the union or had joined it.
This record paints a picture not of employees exercising their right to "self-organization" or their right to "bargain collectively through representatives of their own choosing" but, on the contrary, limns one of two labor organizers coming to Miami Beach early this year, organizing a local labor union, and attempting for a period of two to three months, as they had every right to do, to persuade petitioners' employees that they were not being treated fairly in the matter of hours, wages and conditions of work, and that they should therefore designate the union as their bargaining agent or join the union or do both. After failing to so persuade no more than an insignificant number of such employees that they were being treated unfairly, as is established by the designation cards introduced in evidence, they immediately resorted to the use of the coercive effect of picketing without either of them first establishing by any evidence substantial in character that the respondent union in truth and in fact had been designated as the bargaining agent of any employees of the petitioner. Thereafter these men, who cannot be said to have given the employers a fair opportunity to negotiate since they gave said employers no substantial evidence of the union's authority to represent any of the employees, arranged for and had the picket lines thrown up for the obvious purpose of forcing the employers to cause their employees to designate the union as their bargaining agent and perhaps to join the union. That picketing carried on under such circumstances is unlawful cannot be gainsaid. It falls within the "unlawful purpose" doctrine of Miami Typographical Union No. 430 v. Ormerod, Fla., 61 So.2d 753.
We hold that the picketing in these cases was begun by respondents without first having submitted to the petitioners competent substantial evidence of their authority as alleged bargaining agents, which caused the picketing to be unlawful, and that the picketing was carried on for an unlawful purpose.
We do not deem it necessary to determine the applicability in these cases of Sec. 447.09(3), Florida Statutes, F.S.A., or its constitutionality.
The petitions for certiorari should be granted and the challenged orders quashed.
It is so ordered.
DREW, C.J., and TERRELL and SEBRING, JJ., concur.