HORTON, Judge.
This is an interlocutory appeal from orders of the Circuit Court of Dade County, granting a temporary injunction against the appellant and denying its motion to dismiss the appellee’s complaint.
The appellee filed a complaint for injunction which, in essence, alleged that the appellant had established a picket line around the appellee’s plant for the purpose of forcing the appellee to recognize the appellant as the representative of a majority of the appellee’s employees for collective bargaining. The complaint further alleged that the appellee was engaged in interstate commerce and had petitioned the National Labor Relations Board to hold an election to determine whether appellant represented a majority of the employees and whether such employees desired the appellant to act as their bargaining agent. There was no charge of violence or en masse picketing. As the appellee points out in its brief, the essence of its complaint was that the appellant was attempting, by the use of picket lines, to force the appellee to do something which would, if done, be a violation of the National Labor Relations Act.
*463 Testimony was taken before the chancellor which disclosed that there was no violence, unlawful acts or en masse picketing, and that the appellee had refused to recognize the appellant as the bargaining agent for a majority of the appellee’s employees; that the appellee had requested the National Labor Relations Board to conduct an election to determine whether or not the appellant had been designated by a majority of the appellee’s employees as their bargaining agent. The chancellor entered a decree and in so doing, said;
“I am going to grant the injunction purely as a stopgap until the National Labor Relations Board acts on this application or sends somebody here to allow an election and find out whether or not they represent a majority. That is the sole and only purpose of the injunction.”
The primary question raised on this appeal is whether or not, under these circumstances, a state court has jurisdiction to enjoin peaceful and non-mass picketing designed to require the employer to recognize the union as the bargaining representative, where the employer is admittedly engaged in interstate commerce. We conclude that the question should be answered in the negative.
The appellant and the appellee have both argued the case of Weber v. Anheuser-Busch, Inc., 1955, 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546, in support of their respective positions. That case turned primarily on the same question involved in the case at bar. The Supreme Court of the United States held, in substance, that the federal act (National Labor Relations Act) had pre-empted state jurisdiction and quashed the injunction theretofore granted by the state court of Missouri. The ap-pellee also places great emphasis upon the opinion of the Supreme Court of the United States in United Automobile, Aircraft & Agricultural Implement Workers of America v. Wisconsin Employment Relations Board, 1956, 351 U.S. 266, 76 S.Ct. 794, 799, 100 L.Ed. 1162. In that case, the employer alleged that striking members of a union had engaged in mass picketing, obstructing ingress to and egress from the employer’s plant, interfering with free and uninterrupted use of the highway, preventing persons who desired to be employed from entering the plant, coercing employees who desired to work and threatening them as well as their families with' physical injury. The Wisconsin Employment Relations Board issued a cease and desist order against the activities of the union members, which order was subsequently enforced by the Wisconsin courts. The rationale of the decision in that case, simply stated, is that although unfair labor practices have been committed within the meaning of the federal act, accompanied by violence and coercion, this alone does not prevent a state from exercising its right to enjoin violence and coercion. The Supreme Court, in commenting on this phase of the case said:
“The States are the natural guard ians of the public against violence. It is the local communities that suffer most from the fear and loss occasioned by coercion and destruction. We would not interpret an act of Congress to leave them powerless to avert such emergencies without compelling directions to that effect.”
This case we do not feel is controlling for the very obvious reason that no violence or en masse picketing, destruction of property or coercion of employees has been alleged or shown to exist in the case at bar.
A case which we feel is more closely on point and which demonstrates more clearly the answer to the question at bar is San Diego Building Trades Council v. Garmon, 1957, 353 U.S. 26, 77 S.Ct. 607, 1 L.Ed.2d 618. In that case, the respondents were a partnership operating two retail lumber yards in San Diego County, California, and were admittedly engaged in interstate commerce. The petitioning *464 unions requested the respondents to sign a contract including a union shop provision. The respondents refused on the ground that it would be a violation of the National Labor Relations Act to sign such a contract before a majority of their employees had selected a union as their collective bargaining agent. Upon this refusal, the unions commenced peaceful picketing to enforce their demands and approximately one week later, the respondents filed suit for injunction in the Superior Court of California, alleging that they were engaged in interstate commerce and that the contract sought by the unions would violate the National Labor Relations Act. On the same day as the filing of the suit, the respondents filed with the National Labor Relations Board a petition requesting that Board to resolve the question of the representation of their employees. This petition was dismissed by the Board but the unions nevertheless contended that the Board had exclusive jurisdiction. The Superior Court of California enjoined the picketing until such time as one of the other of the unions had been designated as the collective bargaining representative of the respondents’ employees. This decision was affirmed by the California Supreme Court (Garmon v. San Diego Building Trades Council, 45 Cal.2d 657, 291 P.2d 1). The Supreme Court of the United States granted certiorari and vacated the orders of the state court. In so doing, the court said [353 U.S. 26, 77 S.Ct. 608]:
“What we have said in Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598 [1 L.Ed.2d 601], and Amalgamated Meat Cutters [and Butcher Workmen of North America, Local No. 427, A.F.L.] v. Fairlawn Meats, Inc., 353 U.S. 20, 77 S.Ct. 604 [1 L.Ed.2d 613], is applicable here, and those cases control this one in its major aspects.”
The gist of these cited decisions, as applied to businesses affecting interstate commerce, is that the assertion of an alleged unfair labor practice under the National Labor Relations Act [§ 8(b) (2), 61 Stat. 141, 29 U.S.C. § 158(b) (2), 29 U.S.C.A. § 158(b) (2) ] places exclusive jurisdiction in the National Labor Relations Board, even though that Board, upon petition, may have declined to exercise its jurisdiction, in which event, until the Board cedes or confers jurisdiction upon the state administrative boards or state courts by specific act, the federal power lies “dormant and unexer-cised.” Bethlehem Steel Company v. New York State Labor Relations Board, 1947, 330 U.S. 767, 67 S.Ct. 1026, 1031, 91 L.Ed. 1234.
We have carefully considered all of the authorities cited by the appellee in its brief, and particularly Boca Raton Club v. Hotel Employees Union, Fla.1955, 83 So.2d 11, and Fontainebleau Hotel Corp. v. Hotel Employees Union, Fla.1957, 92 So. 2d 415, but we are unable to find wherein our conclusion in this case is in conflict therewith.
Accordingly, the orders appealed are reversed with directions to dissolve the temporary injunction and to dismiss the bill of complaint.
Reversed with directions.
CARROLL, CHAS., C. J., and PEARSON, J., concur.