## North East Texas Motor Lines, Incorporated, v. M. R. Dickson et al.

No. A-1742. Decided March 23, 1949.
Rehearing overruled May 11, 1949.
(219 S. W., 2d Series, 795.)

*Phinney, Romick & Hallman, Carl L. Phinney* and *Charles Romick,* all of Dallas, for petitioner, North East Texas Motor Lines, Inc.

It was error for the Court of Civil Appeals to find that a labor dispute existed between petitioner and its employees upon evidence which it conceded was conflicting and in rendering judgment for respondents in the absence of a contention that there was no evidence, or that the evidence was insufficient to support the judgment of the trial court. Austin, Banking Comr., v. Nieman, 3 S. W. (2d) 128; Carpenters and Joiners Union v. Ritter's Cafe, 149 S. W. (2d) 694; Smith v. Patterson, 294 S. W. 984; Buchanan v. Davis, 300 S. W. 985.

*Mullinax, Wells & Ball* and *Charles Morris,* all of Dallas, *Combs & Dixie* and *Emilie Heinatz,* all of Houston, and *David Previant,* of Milwaukee, Wisc., for respondents, Dickson and other labor defendants.

The Court of Civil Appeals erred in refusing to hold that the judgment and any statute upon which it might be based deprived employees of liberty and property without due process and equal protection of the laws in that they restrain the right of free speech and interfere with contract obligations among other things, contrary to the fourteenth amendment to the constitution of the United States. Cline v. Insurance Exchange of Houston, 140 Texas 175, 166 S. W. (2d) 677; Jax Beer Co. v. Palmer, 150 S. W. (2d) 452; Hunt v. Crumboch, 325 U. S. 821, 89 L. Ed. 1954, 65 Sup. Ct. 1545.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

In this suit filed by petitioner North East Texas Motor

Lines, Inc., a permanent injunction was issued in the trial court against a labor organization, referred to in the record as Local No. 745, Teamsters Union, A. F. of L., its officers and representatives, certain individual employees or former employees of the plaintiff, and a number of truck lines which had been doing business with the plaintiff. The truck line defendants did not appeal, and so no notice will be taken in this opinion of the injunction in so far as it affects them. The union, its officers and representatives, and four of the employees or former employees of the plaintiff appealed to the Court of Civil Appeals, Fifth District, at Dallas. That court dissolved the injunction in so far as it forbade the picketing of plaintiff's place of business, but upheld it in all other respects. 210 S. W. (2d) 660.

■ Since in our view the controlling question for decision here relates to the correctness of the judgment of the Court of Civil Appeals dissolving the injunction against picketing, our statement of the case will bear directly upon that question. The respondents did not request findings of fact by the trial court, but chose to appeal without having the benefit of such findings. We must, therefore, presume that the trial court resolved every disputed fact issue in favor of petitioner, the winning party, and must consider only the evidence which supports its judgment, disregarding all evidence in conflict therewith. That rule is so elementary and well established that it does not call for the citation of authorities in its support. In the light of that rule we consider the record before us.

North East Texas Motor Lines, Inc., is a Texas corporation, a common carrier of freight in Texas and Oklahoma under permits from the Interstate Commerce Commission and the Texas Railroad Commission. It carries about 300,000 pounds of freight each day, and has contracts and interchange agreements with eighteen truck lines. It employs between 130 and 165 persons to keep in operation its 92 trucks and service more than 5,000 customers.

On September 16, 1946, eleven persons employed by the petitioner in the pick up and delivery service of its Dallas terminal authorized, in writing, Local 745 to represent them as collective bargaining agent. The employees were not members of this or any other union, although petitioner's managers had theretofore informed its employees that they could join any union that they desired. The next morning after these eleven employees authorized Local 745 to represent them, J. L. Robinson, president of petitioner corporation, received at his office in Paris, Texas, a long distance telephone call from R. M. Dick-

son at Dallas. Mr. Dickson is assistant business agent of Local 745, and is a party to this suit. According to Robinson, Dickson told him that he was an officer in the union, that he had signed up two-thirds of petitioner's employees, and wanted to know whether Robinson would sign a contract. To quote from Robinson's testimony:

"I said, 'Well, I don't know; I don't think so, but'—well, he said, 'I will come over; can I come over and talk to you?' And I said 'Sure you can. I will be glad to have you.' Well, he didn't come over.

"Q. Did he tell you what kind of a contract it was?
"A. Well, no; it was a union contract.
"Q. Well a union contract?
"A. Yes, sir.
"Q. Did he ever send you a copy of this contract?
"A. He didn't.
"Q. Did he ever come over?
"A. No. sir."

Dickson never appeared in Paris; instead, on the next morning, September 18, 1946, the eleven employees above mentioned walked off their jobs after signing in to work for the day, and pickets were stationed around petitioner's Dallas terminal. These pickets carried signs reading, "North East Texas Motor Lines unfair to Teamsters Union. A. F. of L." At the same time, union representatives notified all truck lines with which the union had contracts that the petitioner was on the "unfair list." The consequences were that those employees of other truck lines with which petitioner had interchange agreements who were members of the union refused to cross the picket line or to handle goods being transferred to petitioner by other truck lines or by petitioner to other truck lines. As a result, petitioner's business at its Dallas terminal decreased 90 per cent. the first day that picketing began. None of the employees had ever made any demand for shorter hours, better wages, or improved working conditions.

Upon the foregoing state of facts the trial court found, in its judgment, "that no bona fide labor dispute existed between plaintiff and labor union defendants, that plaintiff has suffered damages by reason of the acts and conduct of said labor union defendants, and will suffer irreparable damages unless the injunctive relief hereinafter set out is granted to plaintiff by this Court; and that upon the pleadings and evidence in this case the plaintiff is entitled to the injunctive relief as hereinafter set out." A part of the relief granted in the injunction was that

the respondents "are hereby restrained and enjoined from establishing and maintaining a picket or pickets at or near plaintiff's place of business in the City of Dallas, Texas, at or near the places of business of said Truck Line defendants, or elsewhere within the State of Texas, for the purpose of publicizing the plaintiff as unfair to said labor unions, or that plaintiff is on the 'unfair' list."

The facts, as above detailed, which we must accept as true, disclose a very strange and unusual course of conduct. The only notice given to petitioner's managers that any of its employees were dissatisfied with their wages, hours or working conditions, or were desirous of making any change, was that given by Dickson to Robinson over long distance telephone on the morning of September 16th. After considering the evidence regarding that conversation, the trial court must have concluded that Dickson never made any demand, and Robinson therefore did not refuse to meet or satisfy any demand. The court must have concluded also that Dickson promised to visit Robinson at the main offices of petitioner at Paris and discuss the terms of a contract which he desired Robinson to sign, and then, after leading Robinson to believe that he would be given an opportunity to learn the terms of the contract and to negotiate with respect thereto, never presented himself in Paris, but assisted the other respondents in applying economic pressure to petitioner to procure its acceptance of demands unknown to it or to any of its officers. It is but fair to respondents that we disclose in this opinion that they sharply contested petitioner's evidence; but this court is a court of law with no authority to decide issues of fact, and when evidence is conflicting, must accept the conclusions of the trier of facts as to its credibility and weight.

■  We give full recognition to the principle that there is a direct connection between peaceful picketing and the constitutional guaranty of free speech. Ex parte Henry, 147 Texas 315, 215 S. W. (2d) 588; International Union of Operating Engineers et al v. Cox, 148 Texas 42, 219 S. W. (2d) 787. We also give full recognition to the fact that the decisions of the Supreme Court of the United States are binding in cases of this character. But we have been referred to no decision by that court, nor have we discovered any, which holds that picketing is authorized by our guaranty of free speech for the purpose of informing the public that an employer is unfair to a labor union, when the facts are that the employer had never been offered the opportunity to negotiate with the union. According to the evidence before us, this employer had been afforded no opportunity whatever to negotiate with its employees or with the union;

to the contrary, it had notified the representative of the union that it would be glad to see him. In the absence of any knowledge by petitioner of the nature of any demand which any of its employees or the union desired to make, and in the absence of any opportunity to negotiate, there could be no dispute. Carpenters and Joiners Union of America v. Ritter's Cafe, 315 U. S. 722, 86 L. Ed. 1143, 62 Sup. Ct. 807.

■ The National Labor Relations Act makes it an unfair labor practice for the employer to refuse to bargain with his employees. 29 U. S. C. A., Sec. 158. In recognition of the principle that there can be no bargaining without some character of demand, it was held in National Labor Relations Board v. Columbian Enameling & Stamping Company, Inc., 306 U. S. 292, 59 Sup. Ct. 501, 83 L. Ed. 660, that in the absence of some request by the employees or their representative, an employer was not guilty of an unfair labor practice in refusing to bargain. This quotation is taken from the opinion in that case:

"To put the employer in default here the employees must at least have signified to respondent their desire to negotiate. Measured by this test the Board's conclusion that respondent refused to bargain with the Union is without support, for the reason that there is no evidence that the Union gave to the employer, through the conciliators or otherwise, any indication of its willingness to bargain or that respondent knew that they represented the Union. The employer cannot, under the statute, be charged with refusal of that which is not proffered."

A recent decision by the United-States Supreme Court, while not directly in point, supports in principle our conclusions in this case. In International Union, U. A. W., A. F. of L., Local 232 et al. v. Wisconsin Employment Relations Board et al., 336 U. S. 245, 69 Sup. Ct. 516, 93 L. Ed. 651, the court upheld a statute of the State of Wisconsin which authorizes the State Employment Relations Board to order a labor union to cease and desist from instigating certain intermittent and unannounced work stoppages. The opinion pointed out that "The employer was not informed during this period of any specific demands which these tactics were designed to enforce nor what concessions it could make to avoid them." In holding that the State had the authority to prevent stoppages under the circumstances related, the court wrote:

"We think that this recurrent or intermittent unannounced stoppage of work to win unstated ends was neither forbidden by Federal statute nor was it legalized and approved thereby.

Such being the case, the state police power was not superseded by congressional Act over a subject normally within its exclusive power and reachable by federal regulation only because of its effect on that interstate commerce which Congress may regulate."

■ It would hardly be questioned that while peaceful picketing is free speech, it is more than free speech; it is economic coercion as well. Where an actual labor dispute exists, peaceful picketing at proper places and for lawful purposes cannot be enjoined, although it may have a coercive effect. But the coercive element of picketing necessarily makes it subject to some limitations which might not properly be imposed on other methods of communicating facts and opinions. It is a reasonable limitation upon the right to picket to require that before it can be legally exercised the employer must have been informed of its object and offered an opportunity to negotiate.

■ The terms of the injunction with respect to picketing are construed by us not as a permanent prohibition against any picketing of petitioner in the future, but only as against picketing in the absence of some character of dispute between petitioner and its employees or the union. We would not uphold an injunction, the effect of which would be a broad prohibition against all picketing. While this injunction is technically a permanent injunction, it is in fact to be construed only as an injunction against picketing unless and until some ground arises therefor. If a dispute should arise in the future which can be made the object of peaceful picketing, the injunction in this case will not be construed as a prohibition against peaceful picketing under those circumstances. Our holding is limited to this: Viewing the evidence in the light most favorable to the winning party, as we are required to view it, the action on the part of the pickets and the union was precipitate, and the court was therefore authorized to issue the injunction against picketing. This holding renders it unnecessary to discuss or decide the other questions presented.

The judgment of the Court of Civil Appeals is reversed in so far as it dissolved the injunction of the trial court against picketing. Judgment of Court of Civil Appeals reversed in part, and judgment of trial court affirmed.

Opinion delivered March 23, 1949.

Rehearing overruled May 11, 1949.