THORNAL, Justice.
Petitioner, which is the owner of a Miami Beach hotel named the San Marino, seeks reversal of a portion of an interlocutory order of the Chancellor appointing a commissioner to hold an election of hotel employees to ascertain whether respondent Union is the designated bargaining agent of the employees.
This case is another in a series of cases resulting from the picketing of Miami Beach hotels. See Sax Enterprises, Inc., v. Hotel Employees Union Local No. 255 (A. F. of L.), Fla.1955, 80 So.2d 602; Boca Raton Club, Inc., v. Hotel Employees Union, Local No. 255 (A. F. of L.), Fla.1955, 80 So.2d 680. Typical of the other cases, petitioner filed its complaint against the respondents seeking an injunction against picketing activities of the respondents, alleging that the picketing was done for an unlawful purpose, to-wit, to compel non *584 union employees to join the union and designate it as their bargaining agent in dealing with the employer hotel. Picketing started on June 15, 1955, and this is ¡the crucial date to bear, in mind. The Chancellor entered an interlocutory order enjoining picketing at the San Marino Hotel until. further order of the court. The whole problem revolves around the factual determination as to whether the respondent uniqn actually in fact represents the employees of the petitioner hotel.
The Chancellor found that he could not determine the existence or non-existence of this fact from the evidence before him .and by his order appointed a commissioner “for the sole purpose of ascertaining the foregoing facts [whether the union was the designated bargaining agent of the hotel employees] for the benefit of this Court, within 30 days from the date of this Order [to] cause an election by secret ballot to be held by the employees of plaintiff as of June 15, 1955, who come within the jurisdiction of the defendant Union, to determine- the free choice of said employees as to their representation by defendant Union in the matter of labor-management relations ; * *
By petition for writ of certiorari the Hotel challenges the correctness of that portion of the order appointing a commissioner to hold a secret election. Our examination of the record and exhibits shows that according to petitioner’s exhibit 13, the hotel had 29 employees on June 15, 1955, that of these 29 employees, 20 were in the classification served by the respondent union, to-wit, bellmen, elevator operators, housekeepers, maids, housemen. The Union admits that it does not serve employees such as bookkeepers, typists and management employees. Respondents’ Exhibit A consists of 28 so-called “white cards” signed by various individuals designating the respondent Union as its bargaining agent. Exhibit A also includes 20 so-called “yellow cards” signed by various individuals designating the “Miami Hotel Trades Council,” allegedly consisting of affiliates of the American Federation of Labor, as their bargaining agent. A careful comparison of the names appearing on the 48 cards constituting Exhibit A shows that they include only 3 of the names of petitioner’s employees who would be served by the respondent Union appearing on plaintiff-petitioner’s Exhibit 13.
In our opinion in Sax Enterprises, Inc., v. Hotel Employees Union Local No. 255 (A. F. of L.), 80 So.2d 602, 603, we held:
“Without doubt a labor organization has the right to engage in peaceful picketing of an employer’s premises when predicated upon the refusal of the employer to recognize and negotiate with the union as the representative of such employer’s employees. In order for such picketing to be lawful, the union must establish that the employees have chosen it as their representative, Treasure, Inc., v. Hotel & Restaurant Employees and Bartenders’ Union, supra [Fla., 72 So.2d 670], and the labor organization must also inform the employer of the object to be accomplished by the picketing and afford to the employer a fair opportunity to engage in negotiations. See North East Texas Motor Lines, Inc., v. Dickson, 148 Tex. 35, 219 S.W.2d 795, [11 A.L.R.2d 1065].” (Emphasis ours.)
In the matter now before us the petitioner who sought the injunction below brought in a list of its employees as of the date the picketing started, identified them according to the ' nature of their employment and showed that only 3 of them had designated the respondent as their representative. This shifted to the respondent the burden of going forward with the evidence to establish that it was in fact the authorized representative of the employees of the petitioner in order to justify the respondent in demanding that the petitioner bargain with it as the labor management representative of the employees. In order to carry this burden the respondents then produced the 48 cards identified as Respondents’ Exhibit A and these cards show that only 3 of the employees named by peti *585 tioner are affiliated with the respondent Union, according to respondent’s own exhibit. Each party doubts the other’s records but on this appeal neither party has cited to this court any authority for the appointment of a commissioner to hold an extra-legal secret ballot in order to produce evidence for the consideration of the court in a matter pending in litigation before it.
It was the responsibility of the litigants to produce the evidence sufficient to enable the court to arrive at a proper judgment. If there is any doubt about the accurateness or authenticity of the list of employees produced in evidence below by the petitioner as its Exhibit 13, it would have been a very simple matter to have subpoenaed its payroll records and ascertain the facts from the original. The procedure that was followed, to wit, the appointment of a commissioner to hold a so-called secret election so far as we can determine has no precedent either in labor management litigation or for that matter within the traditional equity procedures heretofore recognized by this or any other court. No precedent has been cited by either party to this appeal. Such procedure obviously deprives both parties of the established right of cross-examination and the confronting of witnesses as well as the compelling of witnesses to testify under oath. If the Chancellor desires further evidence, certainly the rules make available to him appropriate processes for obtaining it either by the compulsion of the appearance of witnesses before him together with the subpoenaing of exhibits or by the reference of the matter to a Master to hear the testimony under oath in the presence of opposing counsel and parties who then have the right of cross-examination. Respondent’s claim for the desirability of secrecy to protect the Union members against alleged “black-listing” loses vitality when we note that respondents themselves have actually filed in this cause membership cards signed by their alleged members.
If facts have occurred since the filing of the complaint which were not included in the original pleadings and which constitute additional grounds either for complaint or as defenses to the complaint, our present rules make adequate provision for an orderly procedure to bring these matters to the attention of the Chancellor. The record in this. case at least indicates grounds for suspicion that all parties involved were sparring around in an effort to gain some tactical advantage rather than a straightforward procedural effort to enable the able Chancellor to arrive at the right and truth of the situation that they presented to him by their pleadings. The parties should present their own case and they should not impose upon the Chancellor the burden of presenting it for them.
It appears to us that in the series of cases involving this particular problem which has already been heard by this court on several occasions, the rules governing the presentation and disposition of the litigation have been adequately and clearly set forth and we can frankly find no justification for the continuation of tactics which can only result in delay and ultimate harm to all parties concerned, including the public which we judicially know has a vital interest in the Miami Beach hotel industry.
The decree is approved insofar as it provides “picketing at the San Marino Hotel shall be and the same is hereby enjoined until further order of this Court”.
In other respects the petition for certio-rari is granted, the decree appealed from is quashed, and the cause is remanded for further proceedings consistent with this opinion.
DREW, C. J., and TERRELL and ROBERTS, JJ., concur.
CRAWFORD, Associate Justice, heard the oral argument but did not participate in opinion or judgment.