OFFICE EMPLOYEES INTERNATIONAL UNION LOCAL NO. 129, AFL–CIO et al., Appellants,

v.

HOUSTON LIGHTING AND POWER COMPANY, Appellee.

No. 10573.

Court of Civil Appeals of Texas.

Austin.

May 14, 1958.

Rehearing Denied June 11, 1958.

Sam Houston Clinton, Jr., Austin, for appellants.

Hugh M. Patterson, V. R. Burch, Jr., Baker, Botts, Andrews & Shepherd, Houston, for appellee.

HUGHES, Justice.

This is an appeal from a temporary injunction granted appellee Houston Lighting and Power Company, enjoining Office Employees International Union Local No. 129, AFL–CIO, Alma Herring individually and as a representative of such Union, C. F. Stevenson and the officers and agents of the Union and those acting in concert therewith "from establishing or maintaining any picket line or lines at the Sam Bertron Plant of plaintiff located in Harris County, Texas, or at any other plants, locations, properties or places of business of plaintiff, and from in any manner attempting to disrupt the service of plaintiff or to prevent the maintenance by plaintiff of its facilities for the production, manufacture, transmission and distribution of electric energy; or from in any manner, either directly or indirectly, attempting to secure the disregard, breach or violation of the existing labor agreement between plaintiff and International Brotherhood of Electrical Workers, Local Union No. 66, AFL–CIO."

In the Court below and in this Court those enjoined appellants here, challenged the jurisdiction of the Trial Court to entertain this proceeding or to grant any relief "since the labor practice alleged is within

the protection of, or is prohibited by, the Taft-Hartley Act (Labor Management Relations Act of 1947) and the business involved is in or affects interstate commerce, the National Labor Relations Board has exclusive jurisdiction to adjudicate the need for injunctive relief and a state court has no jurisdiction to grant such relief and cannot exercise jurisdiction to grant it."

Our Supreme Court in Ex parte Twedell, 309 S.W.2d 834, 839, stated the rule to be applied in determining the Court's jurisdiction in this type of case as follows:

"We held in the case of Dallas General Drivers, Warehousemen and Helpers v. Wamix, Inc., Tex., 295 S.W.2d 873, 878, that 'when a suit seeking injunctive relief against labor practices is filed in a state court that court will be held to have jurisdiction unless the evidence shows that: (1) the activity is one coming within the area covered by the Labor Management Relations Act, (2) the business is one affecting interstate commerce.' [1] * * *

"* * * the state court should decline jurisdiction in the first instance if the plaintiffs, as they did here, plead unfair labor practice (f)acts reasonably bringing the controversy within the sections of Taft-Hartley prohibiting those practices and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by the Act." [2]

Appellee pleaded that it is a Texas Corporation engaged in Houston and in an area of approximately 50 miles surrounding Houston in the manufacture, production, distribution and sale of electric energy to municipalities and the general public. It alleged that certain of its employees including its production, maintenance and operating employees were represented for the purpose of collective bargaining by the International Brotherhood of Electrical Workers, Local Union No. 66, AFL-CIO, under a contract between it (appellee) and such Union and, upon information and belief, appellee alleged that its employees engaged in the construction of additional facilities at its Sam Bertron Plant were represented by other building and trade unions located in the Houston area and that other employees including appellant C. F. Stevenson were not represented by any labor organization or union. Appellee further pleaded that prior to the event later related in the petition it had no knowledge that the appellant Union represented or claimed to represent any of its employees including C. F. Stevenson.

On October 18, 1957, appellee, according to its petition, discharged C. F. Stevenson "for incompetence and failure to perform his work properly" and that on or about October 25, 1957, it received a telephone call advising it that Mrs. Alma Herring, a representative of the appellant Union claimed to represent C. F. Stevenson and that Mrs. Herring had stated that she and such Union would place or cause to be placed a picket line at appellee's Sam Bertron Plant because of the discharge of C. F. Stevenson and that this information was the first information it had received that C. F. Stevenson was a member of or was represented by such Union and that neither Mrs. Herring nor any other representative of such Union had communicated

1. It is conceded here that the business of appellee is one affecting interstate commerce within the meaning of the National Labor Relations Act.

2. On this point we quote from Weber v. Anheuser-Busch, 348 U.S. 468, 75 S. Ct. 480, 488, 99 L.Ed. 546:

"But where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance."

with appellee or any of its responsible agents.

On October 28, 1957, appellee alleged, a picket line was established near its Sam Bertron Plant by the appellant Union which bore this sign:

> "Office Workers Local 129 AFL-CIO Protests the Discharge by Houston, Lighting & Power Company of an Employee because of His Membership in Local 129. Local 129 Does Not Intend to Induce or Encourage Any Other Employees of the Employer to Engage in a Strike or Concerted Refusal to Work."

As a result of establishing this picket line appellee alleged that about 311 of its employees remained away from work and that under its contract with the International Brotherhood of Electrical Workers, Local Union No. 66, AFL-CIO, it was agreed "that during the term of this Agreement there shall be no strikes, walkouts or other cessation of work by the Union or its members."

Appellee alleged that the purpose of the picketing by the Union was for the purpose of procuring the violation of its agreement with the International Brotherhood of Electrical Workers and to disrupt the service it is engaged in and that such will be the effect of continued picketing.

The picketing of its Sam Bertron Plant and the participation therein by appellants was alleged to be in violation of Arts. 5154d, 1446a, 5154f, Vernon's Annotated Civil Statutes, and the common law of this State.

Allegations of damages of an irreparable nature and inadequacy of remedy at law were fully made and injunctive relief as well as substantial damages were sought.

Do these allegations disclose a controversy which is within the test which we must apply in deciding the jurisdiction vel non of the Trial Court to issue the temporary injunction?

The basic allegations, as we interpret the petition, are these (1) appellee discharged C. F. Stevenson for cause and not knowing that Stevenson was affiliated with any Union (2) a picket line was set up by the appellant Union protesting such discharge (3) such picket line was for the purpose of causing a violation of appellee's contract with Union other than the appellant Union and in order to disrupt the business of appellee.

We quote from appellants' brief:

> "As to the labor practices alleged, it is likewise clear that they are either protected by or prohibited by the Labor Management Relations Act of 1947. Whichever is a matter for the National Labor Relations Board not a state court to decide, although Appellants submit they are protected, not prohibited.

> " * * * the Act grants extremely generous rights of self-help to the employee and, derivatively, to his union. Section 7 (29 U.S.C.A., § 157) [3] is the keystone of these rights, although others are found elsewhere (such as right to present grievances in Section 9 (a) [29 U.S.C.A. § 159(a)] and the right to the exercise of freedom of speech in Section 8(c) [29 U.S.C.A. § 158(c)] etc.). The phrase 'concerted activities' as used in Section 7 is all-embracing. As was said in Breidert Co. v. Sheet Metal Workers (1956)

3. Vol. 29, U.S.C.A. § 157, provides:
   "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title."

[139 Cal.App.2d 633] 294 P.2d 93, at [page] 96(3):

" 'These "concerted activities" protected by Section 7 of the Federal Act clearly include the right to strike, peacefully picket, and boycott for purposes and by methods not prohibited by Section 8. (Citing decisions of the Supreme Court.)' "

We are aided in a decision of the questions presented by an excellent article by Mr. Lloyd Scurlock in 35 Texas Law Review, p. 554, Pre-Emption in Labor Relations from which we quote:

"The protection that the LMRA affords employees is conditioned upon the satisfaction of two requirements. The first requirement is that the activity must be a concerted effort of the employees, which is any activity involving two or more employees. [See N. L. R. B. v. Office Towel Supply Co., 2 Cir., 1952, 201 F.2d 838 (two employees discussing the need to organize are engaged in concerted activity).] The second requirement, that the activity must be for the mutual aid and protection of the employees, is more controversial. It is not met by activity calculated to injure the employer without procuring any simultaneous employee benefit. [Joanna Cotton Mills v. N. L. R. B., 4 Cir., 1949, 176 F.2d 749.]"

■ It is our opinion that neither of these requirements is present here.

There was no "concerted activity" by employees of appellee because even if it be conceded that Stevenson was an employee it is not alleged that he acted in concert with any other employee.

■ It was alleged here that Stevenson was rightly discharged for a cause (incompetence) wholly unrelated to any activity within the protection of the National Labor Relations Act. Under these circumstances Stevenson himself was no longer an employee of appellee. N. L. R. B. v. Texas Natural Gasoline Corporation, 5 Cir., 1958, 253 F.2d 322.

It is not to be gainsaid that an employer may discharge an employee for good cause and that incompetence of the employee is good cause.

In Joanna Cotton Mills v. N. L. R. B., 4 Cir., 176 F.2d 749, 753, the Court said:

"We must not forget that the National Labor Relations Act 'does not interfere with the normal exercise of the right of the employer to select its employees or to discharge them'; that the employer 'may not, under cover of that right, intimidate or coerce its employees with respect to their self-organization and representation, and, on the other hand, the Board is not entitled to make its authority a pretext for interference with the right of discharge when that right is exercised for other reasons than such intimidation and coercion.' "

■ Concerted activities of employees for their mutual aid and protection, as guaranteed by the Act, must be in pursuance of some legitimate or lawful purpose. In International Union, etc. v. Wisconsin Emp. Rel. Bd., 336 U.S. 245, 69 S. Ct. 516, 523, 93 L.Ed. 651, the Court in discussing the meaning of "concerted activities" said:

"In the light of labor movement history, the purpose of the quoted provision of the statute becomes clear. The most effective legal weapon against the struggling labor union was the doctrine that concerted activities were conspiracies, and for that reason illegal. Section 7 of the Labor Relations Act took this conspiracy weapon away from the employer in employment relations which affect interstate commerce. No longer can any state, as to relations within reach of the Act, treat otherwise lawful activities to aid unionization as an illegal conspiracy merely because they are undertaken by many

persons acting in concert. *But because legal conduct may not be made illegal by concert, it does not mean that otherwise illegal action is made legal by concert."* [4]   (Italics added.)

It is only necessary that, in regard to the petition, we additionally note the allegations that the picket sign recited that the discharge of Stevenson was "because of his membership in Local 129."

Appellee did not directly nor indirectly plead the truth of this recitation nor was its truth put in issue by appellee's petition.

■ It is our opinion that appellee's petition did not plead unfair labor practices which reasonably brought its controversy within any prohibition of the Federal Act or which may reasonably be deemed to come within the protection afforded by that Act.

We must now examine the evidence to see whether or not it raises an issue of this nature.

We copy from appellants' brief their summary of the evidence:

"Upon hearing, the proof showed, among others, the following facts concerning the labor dispute over Stevenson's discharge and the resultant picketing; all from Power Company witnesses, Appellants offering no testimony in view of their contest of jurisdiction.

"That Stevenson was summarily discharged after some five years of employment on October 18, 1957, by O. E. Lonquet, Office Construction Manager, in the presence of George Haskell, Project Manager; Lonquet made some reference to the 'quality' of Stevenson's work, handed him a termination check for two weeks' pay in lieu of notice; whereupon Stevenson

said any further conversation would have to be 'with my business agent because I belong to the union.'

"By letter dated October 26, 1957, Stevenson requested Power Company to comply with Article 5196 by giving him a written statement setting out the information therein required. Although the Trial Court refused to receive further evidence on the issue, testimony for Bill of Exceptions shows that the request was not complied with.

"At about this same time, Power Company, through an administrative officer, was called by J. C. Epperson, Business Manager for inside union, who told him that Appellants proposed to picket the Sam Bertron Plant because of Stevenson's discharge. Epperson had previously talked to Appellant Herring concerning the picket and the reason therefor and pointed out to her that inside union had a contract with Power Company and it contained a 'no-strike clause'. Epperson told Herring that 'we could not observe' the picket line to which Herring replied, 'Do as you please.'

"At no time during the first conversation did Herring ask Epperson to observe or have his members 'respect that picket line.'

"The next day, after talking to Power Company representative and finding out that Stevenson was not covered by his contract but was 'on the construction side', Epperson called Herring again. At no time during the second conversation did Herring ask Epperson or any of his members or ask him to do anything concerning his members 'so that they would respect the picket line on Monday morning.'

**4.** See this opinion and cases cited in dissenting opinion of Mr. Justice Murphy for instances in which that Court has

held "concerted activities" of employees not to be protected by the Act.

322

"On October 28 a picket sign was displayed on Miller Cut-Off Road near the entrance to Sam Bertron Plant stating the legend alleged in Original Petition, paragraph V; one picket carried the sign and the other walked with him; one of the pickets was Stevenson himself. So far as Witness Haskell, Project Manager, could observe 'it was a peaceful picket line.'

"No construction employee crossed the picket line. EBASCO, construction supervising enterprise, had no contract with unions representing this category of employees nor did Power Company.

"Every office employee except a few with excuses reported to work; they did not engage in a strike, nor respect the picket line.

"There was no evidence that any other employee, being production, operating and maintenance classifications covered by inside union contract, Plaintiff's Exhibit No. 2, respected the picket line. Witness Haskell knew of no maintenance employee nor any operating employee and could not tell the Court that anybody covered by the contract did respect the picket line. The witness Epperson, who tended to this group, forthright stated that 'those employees covered by that contract * * * did go to work;' that none respected the picket line, that none 'observed' the picket line, that they 'went in and went to work.'"

We need only add this summary of the evidence:

Appellee is a utility company engaged in furnishing electric energy to the public the continuance of which service is essential to the life, health and safety of all the people in the area served by it. It is presently engaged in an expansion program which is essential to its ability to serve the power needs of Houston and the surrounding industrial area. In order to do this,

1,500,000 kilowatts of additional capacity must be in service by 1961, and this service can be provided only if appellee's construction schedule is uninterrupted. If the new facilities under construction, including the Sam Bertron Plant here involved, do not go into operation on schedule, there will be a load increase which cannot be handled by appellee's present generating equipment. Furthermore, the completion of these new facilities is essential to the maintenance of appellee's existing equipment. Because of the growing power needs of the Houston industrial area the maintenance of electrical service is not a static process and the completion of the new facilities is an integral part thereof. In fact, if the Sam Bertron Plant is not completed as scheduled, appellee will not be able to meet the loan requirements it will encounter in the approaching summer.

The construction workers at the Sam Bertron Plant are not covered by any bargaining agreement with appellee and they refused to enter the plant while appellants' picket line was up. This resulted in stopping all construction work at the Sam Bertron Plant.

Appellants offered no evidence and there is no evidence that Stevenson's discharge was for any reason except incompetence unless the recitation on the picket sign is evidence of this fact. Clearly this recitation is self-serving hearsay. It is no evidence of the truth of the recited fact. Hearsay evidence does not raise an issue and will not support a judgment. Henry v. Phillips, 105 Tex. 459, 151 S.W. 533.

Besides the jurisdictional assignments appellants assign these errors (1) The Trial Court erred in basing injunctive relief upon Arts. 1446a, 5154d and 5154f, V.A.C.S., in that these statutes are invalid as applied because they conflict with the Labor Management Relations Act of 1947, and as to Art. 5154f that it is applied so as to conflict with the constitutional guaranty of free speech (2) The evidence fails

to support the finding of a violation of Art. 1446a and (3) The Trial Court erred in refusing to admit in evidence refusal of appellee to comply with Art. 5196, V.A.C.S.

We need not consider Art. 5154f for the reason that appellee concedes that this statute is in part invalid and otherwise inapplicable except as to reaffirm the principles enunciated in North East Texas Motor Freight Lines v. Dickinson, 148 Tex. 35, 219 S.W.2d 795, 11 A.L.R.2d 1065.

Art. 5154d provides, in part:

"Sec. 4. It shall be unlawful for any person, singly or in concert with others, to engage in picketing, the purpose of which, directly or indirectly, is to secure the disregard, breach or violation of a valid subsisting labor agreement arrived at between an employer and the representatives designated or selected by the employees for the purpose of collective bargaining, or certified as the bargaining unit under the provisions of the National Labor Relations Act."

Appellee's production and maintenance employees at the Sam Bertron Plant are covered by a valid labor agreement between appellee and Local No. 66, International Brotherhood of Electrical Workers which contains a no-strike clause. Appellants concede that if the picket line set up by appellant Herring was respected that there then "might be a breach of the 'no-strike' clause in the agreement."

The evidence is that the employees covered by the Local 66 contract did not respect the picket line but that some of them crossed it "reluctantly."

In this regard Mr. Epperson, Business Manager of Local 66 testified:

"Q (By Mr. Patterson) * * * assuming that the strike [restraining] Order which has stopped the picket line at the Sam Bertron plant, were removed; and assuming that that picket line were reestablished and maintained for an indefinite period of time, in your opinion, and from your experience, would that materially interfere with your administration of this contract in getting your employees to go to work and cross the picket line? A. Based on the experience that I had on October the 28th, it definitely could create a serious problem, yes, sir."

In our opinion this evidence was sufficient to show a "probable" injury within the rule relating to the issuance of temporary injunctions. Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549.

Art. 1446a, provides in part:

"Section 1. It is hereby declared the policy of this state that continuous service by public utilities furnishing electric energy, natural or artificial gas, or water to the public is absolutely essential to the life, health and safety of all of the people, and that the wilful interruption or stoppage of such services by any person or group of persons is a public calamity which cannot be endured. 'Utilities' as herein defined are dedicated to the service of the public, and the primary duty of such a utility, its management and employees, is the maintenance of continuous and adequate service at all times in order that the safety and health of the people may be protected against the danger inherent in the disruption or cessation of such service. All courts and all administrative agencies of this state are enjoined to recognize this policy and in particular, to interpret and to apply this Act in accordance with such policy."

Section 2 defines a "public utility" and "utility" so as to include appellee.

Section 3 provides:

"It shall be unlawful for any person or persons to picket the plant, premises or any part of the property of a public

utility, as defined herein, with the intent to disrupt the service of such utility or to prevent the maintenance thereof, or if such picketing has the effect of disrupting the service or preventing the maintenance thereof. It shall be unlawful for any person or persons to intimidate, threaten or harrass any employee of such utility with the intention of disrupting its service or preventing the maintenance thereof, or if such intimidation, threats or harassment has the effect of disrupting the service of such utility, or preventing the maintenance thereof." [5]

In International Brotherhood of Teamsters, etc. v. Vogt, 354 U.S. 284, 77 S.Ct. 1166, 1171, 1 L.Ed.2d 1347, it was held that a State may enjoin union conduct in violation of a valid policy of the State and sustained a statute of Wisconsin under which picketing for the purpose of coercing an employer to interfere with its employees in their right to join or not join a union was restrained. After reviewing previous cases the Court stated:

"This series of cases, then, established a broad field in which a State, in enforcing some public policy, whether of its criminal or its civil law, and whether announced by its legislature or its courts, could constitutionally enjoin peaceful picketing aimed at preventing effectuation of that policy."

Appellants say that "construction work is not mentioned anywhere in Article 1446a" and since the operation of the power plant was not affected by the picketing violation of this statute is not shown.

We believe appellants give the statute a more narrow interpretation than is warranted.

The statute and the public policy declared by it is concerned not merely with the maintenance of existing facilities of the utility but with the *"maintenance of continuous and adequate service at all times."* This language includes future service as well as present service. The proof is beyond question that construction of the Sam Bertron Plant is considered necessary for the future needs of Houston and its environs.

▪ It is our opinion that violation of this statute is shown and that such violation constituted a basis sufficient to support the temporary injunction issued by the Trial Court.

▪ On the constitutional objection to the injunction as impairing the right of free speech we quote from Hughes v. Superior Court, 339 U.S. 460, 70 S.Ct. 718, 721, 94 L.Ed. 985:

" 'The domain of liberty, withdrawn by the Fourteenth Amendment from encroachment by the states,' Palko v. Connecticut, 302 U.S. 319, 327, 58 S. Ct. 149, 153, 82 L.Ed. 288, [293], no doubt includes liberty of thought and appropriate means for expressing it. But while picketing is a mode of communication it is inseparably something more and different. Industrial picketing 'is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated.' * * * However general or loose the language of opinions, the specific situations have controlled decision. It has been amply recognized that picketing, not being the equivalent of speech as a matter of fact, is not its inevitable legal equivalent. Picketing is not beyond the control of a State if the manner in which pick-

---

5. Sec. 7 of this Act provides:
"Nothing in this Act shall be construed as a limitation upon the right of any employee of a public utility to quit work and to leave the premises of his employer at any time he chooses so to do, or to refuse to report for work when he so desires."

eting is conducted or the purpose which it seeks to effectuate gives ground for its disallowance. * * * 'A state is not required to tolerate in all places and all circumstances even peaceful picketing by an individual.' "

The picketing here, so far as the evidence discloses, is in protest of an employee's discharge for incompetence. This, in our opinion, is a purpose which justifies and requires a disallowance of the constitutional privilege.

Youngdahl v. Rainfair, Inc., 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151, is cited by appellants as demonstrating the error of the Trial Court in enjoining all picketing. It was conceded there that the National Labor Relations Board had exclusive jurisdiction of the controversy between the parties. Violence accompanied the picketing. The injunction issued by the State Court was sustained as to acts of violence but set aside insofar as it prohibited peaceful picketing. Clearly this case is not in point here.

We overrule appellants' contention that Arts. 5154d and 1446a as applied here conflict with the National law. As we have held in disposing of the jurisdictional question neither the pleading of appellee nor the evidence present issues within the scope of that Act.

■ Appellants' last point is that the Trial Court erred in excluding evidence to the effect that appellee did not comply with Art. 5196, V.A.C.S., in that it refused a written request of appellant Stevenson for a written statement giving the facts and circumstances surrounding and reasons for his discharge and for this reason appellee did not have "clean hands" and was barred from seeking equitable relief.

It is contended, by appellee, that this statute is unconstitutional. See St. Louis Southwestern Ry. Co. v. Griffin, 106 Tex. 477, 171 S.W. 703.

■ We do not pass on the constitutionality of the statute. We merely hold that conceding its validity and conceding appellee's failure to comply with it does not affect the issuance of the temporary injunction. It is not all inequitable conduct which deprives the moving party of equitable relief. It must be such as affects the equitable relations subsisting between the parties. 17 Tex.Jur. 51. The relief sought by appellee has no substantial connection between the request of appellant Stevenson. To deny appellee relief on this ground would penalize the public as well as appellee whereas the statute provides for a fine for the offender only. Art. 5199, V.A.C.S.

As stated by the Houston Court of Civil Appeals in Atkinson v. Thompson, 311 S.W. 2d 250, 257, in deciding an analogous jurisdictional dispute "Of course, we have no way of knowing what the proof on trial will show."

Ordinarily jurisdiction of a Court is tested by the petition. 11-B Tex.Jur. p. 368. In this class of cases, however, it appears that jurisdiction is tested not only by the pleading of the moving party but also by the evidence. If, therefore, the evidence on further hearing legitimately raises an issue within the exclusive jurisdiction of the National Labor Relations Board the Court will not proceed further.

In our opinion the Trial Court did not abuse his discretion in the premises and his judgment should be and it is affirmed.

Affirmed.