Herman R. NORTHRUP, Appellant,

v.

**FIRST NATIONAL BANK IN CANYON,**
Texas, Appellee.

No. 8157.

Court of Civil Appeals of Texas, Amarillo.

May 24, 1971.

Rehearing Denied June 14, 1971.

Hugh L. Umphres, Jr., Amarillo, for appellant.

Williams & Cox, Dale A. Williams, Canyon, for appellee.

REYNOLDS, Justice.

This is a suit on a promissory note brought by appellee, the payee, against appellant, the maker. Judgment in favor of appellee on the note was rendered by the trial court sitting without a jury. Affirmed.

Appellant, admitting the execution of the note, defended on the ground that he delivered the note only on the condition that it also would be signed by one Lewis Hales, and since Hales did not sign the note, appellant contends he is not liable. Appellant concedes that he has the burden to prove conditional delivery. To discharge this burden, he maintains on appeal that all the evidence of probative force af-

firmatively shows a conditional delivery of the note; and, conversely, that there was no evidence or insufficient evidence to support the judgment, or that the judgment is contrary to the great weight and preponderance of the evidence.

Whether the note was delivered conditionally was a question of mutual intent of the parties, and since the evidence as to the intention of the parties was in conflict, it was for the trier of the facts to determine whether the delivery had been conditional. Guaranty Bank & Trust Co. v. Hamacher, 112 S.W.2d 343 (Tex.Civ.App.—Galveston 1937, no writ). By its judgment, the trial court determined that the note was not conditionally delivered. Appellant did not request specific findings of fact, and none were filed by the trial judge, but appellant chose to appeal without the benefit of such express findings. We must, therefore, presume that the trial court found the disputed fact issue of conditional delivery against appellant's contention and in favor of appellee in support of its judgment. In this connection, we must consider only the evidence that supports the judgment, disregarding all evidence in conflict therewith. Quinn v. Dupree, 157 Tex. 441, 303 S.W.2d 769 (1957); North East Texas Motor Lines, v. Dickson, 148 Tex. 35, 219 S.W.2d 795, 11 A.L.R.2d 1065 (1949). In conformity with this rule, we will consider the record before us, but in deference to appellant's position, we will notice the conflicting evidence.

Lewis Hales was indebted to appellee for his farming operations in the aggregate principal sum of $32,414.70, represented by four notes, two of which were past due and payable and two of which shortly were to become due, in addition to one note for $11,-164.00 that had been "charged off" by a bank examiner as being in excess of Hales' security. Appellee's loan officer notified Hales he would have to make payment on the notes or produce more collateral, and first suggested that Hales secure a co-signer whose financial position "was strong enough to make the loan good". The suggested co-signer's signature could not be secured. Hales was informed he "would have to do something". On December 26, 1968, Hales came to the bank offices with one Walter Kellogg, who was known to appellee's loan officer, and appellant, who was not known to the officer, and informed the loan officer they "are going to assume $12,000.00 each of my notes". The loan officer did not know, and was not informed, of the arrangement Hales had with Kellogg and appellant when he brought them to the bank.

During the conference between appellee's loan officer, Hales, Kellogg and appellant, appellant was informed that Hales "had too large of a carryover" and that appellee "couldn't go ahead and finance him" unless some arrangement could be worked out whereby Hales could continue farming and appellee could finance him. By whatever manner Kellogg and appellant were to participate, appellant testified "we agreed on twenty-four thousand, or twelve thousand each, which would get his (Hales') carryover balance of 1968 down to a figure under $10,000.00". A plan was evolved and reduced to writing at the insistence of Kellogg and appellant. The written plan showed the $32,414.70 indebtedness reduced by $24,000.00 to $8,414.70. This $8,414.70, plus an additional $16,585.30 to be loaned by appellee to Hales, was to be evidenced by a new $25,000.00 note signed by Hales and secured by his security agreement, which was an acceptable indebtedness of Hales to enable appellee to "go with Lewis Hales again next year". It was contemplated that appellee would loan Hales additional monies throughout the ensuing year 1969 for his farming operations. The written proposal projected the contemplated advancements to Hales and anticipated repayments by him in a manner to pay the advancements, reduce Hales' $25,000.00 note to $12,420.00, and to pay a $4,000.00 Reduction on Walter Kellogg note" and a "$4,000.00 Reduction on Herman Northrup note" by the end of 1969.

Kellogg executed a $12,000.00 note payable to appellee. A blank note was fur-

nished appellant. The note was a printed form adaptable to one or more signers and had a printed provision therein stating, in effect, that one of the makers was executing a security agreement. Appellant entered the figure "$12,000.00" in the dollar space thereon and the date "12–26–68" in the date space thereof, and signed the note. Appellant did not sign a security agreement. Appellee's loan officer testified the intent was for appellant to pay off $12,000.-00 of Hales' indebtedness with the note in question, while appellant testified it was his intent to sign the note with Hales. It was the loan officer's testimony that when appellant signed the note, it was handed to him. He noted "F/S" thereon to signify appellant would furnish a financial statement, and gave the note to a secretary to be completed by typewriter according to the agreement. Appellant testified that when he signed the note he "shoved it over for Mr. Hales" to sign. Appellant knew he had some liability on the note when he signed it.

At the request of appellant, Hales applied for life insurance, payable to appellee, to cover the two $12,000.00 notes and paid the premium thereon. It is agreed that had the insurance policy matured, the proceeds would have been credited to these two notes. Hales signed a new $25,000.00 note and security agreement to secure payment of his new note, but did not execute any other security agreement. Some two or three days later Hales inquired of appellee's loan officer whether he should sign appellant's note and was told it was not necessary, and at the trial Hales testified it was his mistake that he failed to sign the note. Appellant testified he did not know Hales had not signed the note until some thirty or forty-five days after it became due a year after its date. The record further reflects that Hales was indebted to appellant in the sum of $7,300.00 on the date the note was signed, and some six days thereafter paid appellant almost $5,000.00 on his account.

The trial court had the duty to assess the credibility of the witnesses and the weight to be given their conflicting testimony. The court was not bound by the testimony of any one witness, but could accept all, part or none thereof, or make his own deduction from all the evidence. International Security Life Ins. Co. v. Sullivan, 465 S.W.2d 186 (Tex.Civ.App.—Amarillo 1971, writ filed). On the record the trial court was entitled to conclude, as it did, that the note was not conditionally delivered. It is clear that the purpose of the transaction was to reduce Hales' legal debt to appellee to the figure of $25,000.00, including a new loan of some $16,000.00 for operating capital. To achieve this result, it was necessary that his debt be reduced by $24,-000.00, the amount of the two notes signed by Kellogg and appellant. The proposed transaction had been reduced to writing at the insistence of Kellogg and appellant, and was before appellant at the time he executed the note that is the basis of the judgment. At the conclusion of the transaction, had Hales co-signed the two $12,000.00 notes, his aggregate liability to appellee would have been $73,000.00; had Hales co-signed appellant's $12,000.00 note only, his aggregate liability to appellee would have been $61,000.00. This would have resulted in an indebtedness of either $48,-000.00 or $36,000.00 in excess of Hales' acceptable liability to appellee, when the parties understood the entire purpose of the transaction was to reduce Hales' indebtedness to appellee to the sum of $25,000.00 after a new loan of $16,585.30 was made to him. The trial court was justified in concluding from the evidence that it was not contemplated that Hales would co-sign appellant's note. This conclusion supports the trial court's determination that the note in issue was not conditionally delivered.

Additionally reviewing the "no" evidence assignment in the manner required in Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950), we are of the opinion that the judgment is supported by some evidence of probative force. Further review-

ing the insufficient evidence assignment in the manner required in In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951), we are of the opinion that the judgment is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Therefore, under any acceptable test, appellant's points of error must be, and hereby are, overruled.

The judgment of the trial court is affirmed.