**ASTRONAUTS WAREHOUSES, INC.,**
**Appellant,**

v.

**ADAMS SALES COMPANY, INC.,**
**Appellee.**

**No. 15279.**

Court of Civil Appeals of Texas, San Antonio.

April 3, 1974.

Maebius & Duncan, Inc., San Antonio, for appellant.

John N. McCamish, Jr., Matthews, Nowlin, Macfarlane & Barrett, San Antonio, for appellee.

KLINGEMAN, Justice.

This is an appeal by Astronauts Warehouses, Inc., from a judgment granted to Adams Sales Company for money damages for cartons of towels alleged to have sustained water damage while stored by appellant in its warehouse. Trial was by the court without a jury, and judgment was rendered for appellee against appellant in the sum of $6,840.44. Both parties agree that the relationship of the parties is that of bailor and bailee, and that the bailment is one of mutual benefit.

Appellant, by two points of error, asserts: (1) the district court erred in rendering judgment for appellee because no negligence on the part of appellant was proved; (2) the district court erred in awarding damages for more than 21 cartons of towels because there was no evidence of more wet cartons at the time of delivery to appellee. By counterpoints, appellee asserts that (a) the trial court correctly entered judgment on behalf of appellee because appellant failed to produce any evidence to rebut the presumption of its negligence which is created by proof that the items had been damaged while in possession of the bailors; and also that appellant admitted responsibility for the damage to appellee's property; (b) the trial court's award of $6,840.44 in damages for 43 cartons of towels which were damaged while in appellant's exclusive control is supported by the evidence.

No findings of fact or conclusions of law were requested of or filed by the trial judge. The trial court's judgment therefore implies all necessary fact findings in support of the judgment. In seeking to determine whether there is any evidence to support the judgment and its implied findings of fact incident thereto, it is proper to consider only the evidence most favorable to the issue. Renfro Drug Company v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950); North East Motor Lines v. Dickson, 148 Tex. 35, 219 S.W.2d 795 (1949); Kimbell Milling Company v. Marcet, 449 S.W.2d 100 (Tex.Civ.App.—San Antonio 1969, no writ); U. S. Truck Lines v. Texaco, Inc., 337 S.W.2d 497 (Tex.Civ.App. —Eastland 1960, writ ref'd).

Both parties agree that the rule of law applicable to a bailment of mutual benefit as herein involved is set forth in Trammell v. Whitlock, 150 Tex. 500, 242 S.W.2d 157 (1951), wherein the court said:

"The defendant-petitioner is correct in his contention that the burden of proof

on the whole case, including the issue of negligence, is on the respondent bailor, but as stated in Wigmore on Evidence, 3rd Ed., § 2508, 'Where goods have been committed to a bailee, and have either been lost or been returned in a damaged condition, and the bailee's liability depends upon this negligence, the fact of negligence may be presumed, placing on the bailee at least the duty of producing evidence of some other cause of loss or injury.' Without prejudice to the burden of proof being at all times on the bailor, the bailor under this latter rule makes a prima facie or presumptive case of negligence by proving the bailment and either the return of the goods by the bailee in a damaged condition, not existing at the time of their delivery to him, or a failure by him to return them at all. The rule is said to be based on the just and common sense view that the party in possession of control of an article is more likely to know and more properly charged with explaining the damage to it or disappearance of it than the bailor who entrusted it to his care. It is evidently supported by the weight of authority in the United States, including our own state."

Appellant operates a bonded warehouse located on Bowie Street in San Antonio, Texas. Appellee operates a business dealing solely with military exchanges. Appellant was authorized by appellee to pick up approximately 100 cartons of towels from another warehouse for storage in appellant's warehouse on Bowie Street. In the latter part of October or the first part of November, 1971, appellant picked up such cartons of towels, which included the towels here involved, and delivered them to its warehouse. Appellant's general manager, Mr. James C. Morris, testified that he inspected the cartons as they came in; and as far as he knew, the towels were in good order when they came in; and that he made no notation to the effect that the towels were not in good order. In December, 1971, appellant took an inventory of

its warehouse and, at such time, found no evidence of any water damage to appellee's towels.

On February 11, 1972, 100 cartons of such towels were picked up at appellant's warehouse by East Texas Motor Freight Lines for delivery to the Marine Corps Exchange, Parris Island, South Carolina. This was on a Friday. The only persons present at the time of such pick-up and loading were an employee of appellee named Raul Reyna; an employee of appellant's named Fred Luna, who is now dead; and a truck driver for East Texas Motor Freight Lines. Of such witnesses, only Mr. Reyna testified.

Mr. Reyna testified that he was present and helped with the loading of the towels; that although the cartons of towels on the top of the stack of cartons were not wet, those at the bottom were wet, and some were so wet that they were pulling apart; that all were loaded on the truck; that the driver of the East Texas Motor Freight Lines truck made a notation on the freight bill that 21 cartons of wet towels were loaded on the truck; that the truck driver gave him a copy of such bill of lading; and that he later delivered this back to the warehouse of appellee's and gave it to another employee.

The copy of the bill of lading was introduced into evidence. It is dated February 11, 1972, shows the carrier to be East Texas Motor Freight Lines, with the consignee shown to be the Marine Corps Exchange, Parris Island, South Carolina. The number of items listed thereon is 100 cartons white towels. There is a handwritten notation thereon "21 ctn wet (damp)."

Mr. Reyna further testified that there were other cartons that were damp; and that the 21 cartons listed on such bill of lading as wet were those that were more than damp and were wet.

The record discloses that another truck line, Thurston Motor Lines, Inc., was an intermediate carrier, but that there was no

physical transfer of the towels from one truck to the other and that the same trailer was used throughout the entire movement with only a change in the tractor which pulled such trailer. Freight bills of Thurston Motor Lines were introduced into evidence which show that of the 100 cartons of towels consigned, 57 were delivered to the consignee, and 43 were rejected. There is a notation on one of such bills, "43 cases damaged and refused." There is a notation on the back of one of such freight bills "This shows that 43 wet on arrival at Parris Island."

Mrs. Adrian A. Taylor testified that she is the office manager of appellee's; that on Monday morning, February 14, 1972, Mr. Rudy Sanchez, appellee's warehouse manager, delivered to her the copy of the bill of lading of East Texas Motor Freight Lines that stated that there were 21 cartons of towels shipped wet; that immediately thereafter she notified appellant's office of such fact; that appellant's general manager, Mr. Morris, later called; that in this telephone conversation he admitted liability for these cartons; that after she found out that 43 cartons had been refused by the consignee, she again discussed this matter with Mr. Morris and told him that they were going to claim damages for the 43 cartons; that Mr. Morris, on more than one occasion, admitted that they were responsible for loss and stated that they would pay for them.

She further testified that on March 15, 1972, after the rejected towels had been brought back from South Carolina to appellee's warehouse that she and Mr. Morris inspected such towels together; that they were so wet that they were strung out and not stacked up; that Mr. Morris inspected several cartons, looking at the extremely wet ones, and stated that he had had enough, and that obviously he was liable for them.

Mr. Morris also testified. He denied that he ever admitted any liability for the loss. He did not believe the cartons were wet when they were picked up, but stated that if the cartons were wet, he did not know what caused it. He testified that he had made regular visual inspections of the warehouse; that he never noticed any water in the warehouse; that he never noticed any wet items; and that he never received notices from any other customers about wet merchandise.

Several witnesses testified that they stored merchandise at such warehouse and that they never had any water damages to their merchandise. They acknowledged that they did not know anything about the merchandise here involved.

Under the record, it is undisputed that when the 100 cartons of towels here involved were delivered to appellant's warehouse around November 1, 1971, that they were inspected by appellant and found to be in good order; that they remained in such warehouse under appellant's possession and control until February 11, 1972, when they were picked up by East Texas Motor Freight Lines to be delivered to Parris Island, South Carolina; that at such time the truck driver of East Texas Motor Freight Lines noted on the bill of lading that 21 cartons were wet. This is corroborated by testimony of an eyewitness, Mr. Reyna. It is also uncontroverted that upon arrival of such towels at the point of destination, 43 cartons were rejected because they were damaged and wet.

With regard to the 21 cartons, we have concluded that they come within the holding of Trammell v. Whitlock, supra, that where goods have been committed to a bailee and have either been lost or returned in a damaged condition, the fact of negligence may be presumed, placing on the bailee at least the duty of producing evidence of some other cause of loss or injury. Appellant produced no evidence to rebut this presumption. Appellant relies on such cases as Exporters' & Traders' Compress & Warehouse Co. v. Schulze, 265 S.W. 133 (Tex.Comm.App.1924) and Mustang Aviation v. Ridgway, 231 S.W.2d

677 (Tex.Civ.App.—Dallas 1950, writ ref'd), to the effect that where property is lost or damaged by fire, theft, flood or storm, no presumption of negligence is imputed to the bailee. There is no evidence in this case of fire, theft, flood or storm, and these cases do not help appellant. The trial court was clearly correct in awarding damages to appellee as to the 21 cartons.

A closer question is presented by appellant's alternative point of error that even if the judgment is correct as to the 21 cartons, such liability should be limited to the 21 cartons which were receipted as being wet at the time that they were picked up from appellant's warehouse; and that they should not be liable for more than 21/43rds of $6,840.44. In support of such contention they assert it is well settled that the bailee is liable only for the goods returned by him to the bailor in a damaged condition, and that the only evidence in the record in this respect is the notation appearing on the bill of lading "21 ctn wet (damp)."

However, there is evidence in the record that other cartons were damp and damaged. Mr. Reyna, the only eye-witness who was present at the time of the loading to testify, stated that some of the cartons were so wet that they were tearing apart; that he saw the truck driver make the notation on the bill of lading that there were 21 wet cases of towels, but that in actuality there were others that were damp; that the 21 cartons that were listed on such bill of lading were more than damp, and were wet; that there were others that were damp. It is undisputed that when the towels arrived at the point of destination, 43 cartons were rejected because they were wet and damaged.

■ It is to be remembered that no findings of fact or conclusions of law were requested or filed. The trial court's judgment implies all necessary fact findings in support of the judgment, and it must be affirmed if it can be upheld on any legal theory that finds support in the evidence. Seaman v. Seaman, 425 S.W.2d 339 (Tex.

1968); Bishop v. Bishop, 359 S.W.2d 869, 871 (Tex.1962); Renfro Drug Company v. Lewis, supra; North East Motor Lines v. Dickson, supra. The trial court impliedly found that 43 cartons of towels were damaged while in possession of appellant. There is some evidence in the record to support such implied findings.

The judgment of the trial court is affirmed.