**WEBB CITY, Inc. v. NATIONAL ASSOCIATION for the ADVANCEMENT of COLORED PEOPLE, et al.**

No. 57341.

Circuit Court, Pinellas County.

May 3, 1961.

Buckley, Ramsey & Phillips, Tampa, for plaintiff.

Minnis & Williams and Frank H. White, all of St. Petersburg, and Robert C. Carter, New York City, for defendants.

JACK F. WHITE, Circuit Judge.

This cause came on for final hearing upon application of the plaintiff for permanent injunction, the motions to strike pleadings and to dismiss complaint and dissolve temporary restraining order on behalf of the defendants Ralph M. Wimbish and Bette C. Wimbish, and upon motion to dismiss on behalf of the defendant National Association for the Advancement of Colored People, a non-profit New York corporation; whereupon the court having considered the pictorial exhibits in evidence, the testimony of the witnesses and the able arguments of counsel for the respective parties, and being fully advised in the premises, finds as follows —

This court has jurisdiction of the parties and the subject matter of this cause. The plaintiff is a Florida corporation privately owned and organized and doing a general mercantile business in the city of St. Petersburg, Pinellas County. The defendant National Association for the Advancement of Colored People, commonly known as the NAACP, is a non-profit New York corporation operating in the state of Florida and having a local chapter in St. Petersburg, chartered by said corporation. The defendant Ralph M. Wimbish is president of the St. Petersburg chapter of the defendant corporation, and the defendant Bette C. Wimbish is the wife of the defendant Ralph M. Wimbish.

The plaintiff sought and this court issued on December 6, 1960 a temporary restraining order restraining the defendants, all members of the St. Petersburg chapter of the NAACP, and all other persons acting in conjunction with the named defendants from committing any of the following acts —

(1) Displaying on the premises of the plaintiff, or on the sidewalk immediately adjacent thereto, signs, posters or handbills requesting that members of the public not trade with the plaintiff.

(2)   Picketing the premises of the plaintiff located at 128 Ninth Street South, St. Petersburg, or interfering in any manner whatsoever with the free ingress and egress of the customers of the plaintiff at said place of business.

(3)   Placing telephone calls to the place of business of the plaintiff, except for the purpose of transacting legitimate business with the plaintiff.

(4)   Threatening any employee of the plaintiff, or threatening any person providing transportation to any such employee from his residence to the plaintiff's place of business.

The plaintiff alleges that the acts which have been enjoined were done with malicious intent to injure the business of the plaintiff and force the plaintiff to manage its business in a manner to suit the corporate defendant, and that said acts to the defendants were in fact injurious to the plaintiff's business. The plaintiff contends that such picketing is unlawful and subject to injunction in equity.

The defendants challenge the temporary injunction previously issued herein on the ground that injunction is not a proper remedy and further insist that any permanent injunction in this cause would be violative of the defendants' rights as guaranteed by the 14th amendment to the constitution of the United States and by sections 13 and 14 of the Declaration of Rights of the constitution of the state of Florida. The defendants contend that the picketing was peaceful, as planned, and that peaceful picketing to impel compliance with the social and economic goals of the defendants is lawful and not subject to injunction.

On December 2, 1960 a named group of approximately thirty men and women identified with the defendants other than Bette C. Wimbish, began picketing the premises of the plaintiff in St. Petersburg, carrying large placards reading as follows —

> "DON'T BUY WHERE YOU CANNOT WORK ON ANY JOB OR BE UPGRADED TO BETTER PAYING POSITIONS."

> "BUY WITH FRIENDS: MERCHANTS WHO TREAT YOU WITH HUMAN DIGNITY."

> "DON'T PAY TO BE SEGREGATED. DON'T BUY FOR CHRISTMAS. JOIN THE NAACP'S SELECTIVE BUYING PROTEST."

> "DON'T BUY WHERE YOU AREN'T WELCOME."

The defendant's picketing demonstration was planned and organized by the corporate defendant, acting through the Youth Counsel and the Selective Buying Committee of the St. Petersburg chapter of the NAACP, with intent to disrupt and discourage trade with the plaintiff and in protest of the plaintiff's policies of lunch counter segregation and not having Negro employees more in proportion to the percentage of plaintiff's Negro trade and not employing Negroes in top administrative positions.

On December 3, 1960 the march of the picketers included an inside demonstration within the trading area of plaintiff's premises.

The corporate defendant and its agents who organized the demonstration did not limit participation in the picketing to members of their organization, but on the contrary invited participation in the demonstration by any interested citizens.

On December 6, 1960 one Jack Morrison, Jr. was arrested by St. Petersburg city police on a charge of unlawfully trespassing on the private property of the plaintiff, the evidence disclosing that although not shown to be a member of the NAACP, he was then and there an active participant in the demonstration, was obstructing an entrance to the plaintiff's premises and in so doing had been standing upon the threshold of said entrance. Subsequently he was convicted of an offense against the municipal law of the city of St. Petersburg.

The picketing demonstration resulted in a tense and inflammatory situation in and about the plaintiff's premises which adversely affected the peace and tranquility of the community of St. Petersburg and created an atmosphere of apprehension and potential violence.

During the period from December 2 through December 6, 1960 the switchboard at the plaintiff's place of business was subjected to numerous telephone calls from undisclosed and unknown parties who used profane language directed toward the plaintiff and its employees.

The aforesaid picketing continued for the period of December 2, 3, 5 and 6, 1960 and, as a direct consequence thereof, the plaintiff suffered loss of revenue of not less than $10,000 below the reasonably expected revenue for each of said days. These losses represented substantial damage to plaintiff's private business not adequately remediable by action or actions at law.

The defendant, Bette C. Wimbish, took no active part in the organization of the demonstrations or in the demonstrations themselves and is therefore not a proper party in this cause.

The court is mindful of the various rights and freedoms comprehended, expressly and impliedly, within the protective provisions of the state and federal constitutions. Among these are freedom of speech and opinion and the right to protest and to seek personal betterment. Such are the indisputable rights of these defendants and of all other citizens; but personal rights of this character are qualified rather than absolute because the law implicitly requires that individual rights be exercised with due regard for the rights of others who have the right to differ.

Under the most liberal judicial concept of our constitutional system of government there remain, and should remain, some areas in which private individuals and business establishments have the legal right to pursue distinctive policies not wholly acceptable to others and to resort to the police power of the state for relief against noxious encroachments upon such right.

The right to protest the policies of lawful private interests such as plaintiff's may be exercised within proper limits, for example, through conventional modes of communication or by withholding patronage; but coercive and destructive picketing may be enjoined by a court of equity where, as in this case, there is no adequate remedy at law for continuing and recurring damages.

This points up a well recognized reason for the extraordinary writ of injunction in equity. Law and order would be greatly disserved if restraint through courts of equity were not available in circumstances as disclosed by the record in this case. The only alternatives of the aggrieved party, other than to surrender his legal rights, would be to retaliate in kind or resort to repeated institution of separate proceedings with respect to similar offenses after their commission. Such multiplicity of actions in police courts and other tribunals would be unduly burdensome and relatively ineffectual to curb the unlawful transgressions. See Miami Typographical Union #430 v. Ormerod, Fla., 61 So. 2d 753.

As indicated in the above cited decision of the Supreme Court of Florida, as well as in decisions of the Supreme Court of the United States, even peaceful picketing is not necessarily equated with the constitutional guarantee of freedom of speech. It follows that where picketing is inflammatory and damaging in purpose and effect, as in the instant case, the actions of the de-

fendants are unlawful and are not clothed with constitutional protection.

The defendants argue vindication of their picketing by pointing to the rectitude of their ultimate objectives, suggesting that the ends sought justify the means employed. This is a diversionary argument which begs the real question involved.

It is thereupon ordered, adjudged and decreed as follows —

That the motion to dismiss made at the conclusion of the trial as to the defendant, Bette C. Wimbish, be and the same is hereby granted.

That all motions to dissolve the temporary restraining order be and the same are hereby denied.

That the motions to dismiss as to the defendants, National Association for the Advancement of Colored People and Ralph M. Wimbish, be and the same are hereby denied.

That all motions to strike and to dismiss made preliminary to final hearing be and the same are hereby denied.

That the application of the plaintiff for permanent injunction be and the same is hereby granted except as to the defendant Bette C. Wimbish, and as to all other defendants the temporary restraining order heretofore entered by this court on December 6, 1960 is continued in full force and effect and made a part of this final decree.